**Kenneth Allen McDUFF, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 03–94–00307–CR.**

Court of Appeals of Texas, Austin.

March 27, 1997.

Rehearing Overruled May 1, 1997.

William Barbisch, Austin, for appellant.

Ronald Earle, District Attorney, Philip A. Nelson, Jr., Assistant District Attorney, Austin, for appellee.

Before POWERS, JONES and ONION, JJ.[*]

JOHN F. ONION, Jr., Justice (Retired).

This appeal is taken from convictions for aggravated sexual assault [1] and aggravated kidnapping.[2] The single indictment in separate counts charged appellant, Kenneth Allen McDuff, with the offense of capital murder of Colleen Reed in the course of committing and attempting to commit aggravated sexual assault and aggravated kidnapping, and with the separate offenses of aggravated sexual assault and aggravated kidnapping. After the jury found appellant guilty on all three counts, the death penalty was assessed for the capital offense based on the jury's findings, and the jury also assessed life imprisonment for each of the other two offenses after finding as true the allegations about the numerous prior non-capital felony convictions.

The case was tried in the 25th Judicial District Court of Guadalupe County (Cause No. 93–1322–CR), following a change of venue from Travis County where the indictment had been returned in Cause No. 93–5281 in the 147th Judicial District Court. The capital murder conviction in which the death sentence was imposed was appealed directly to the Texas Court of Criminal Appeals. That Court has affirmed the death penalty conviction, *McDuff v. State*, 939 S.W.2d 607 (Tex.Crim.App.1997) (rehearing denied February 26, 1997). After the completion of the instant trial, the cause, insofar as it related to the convictions for aggravated sexual assault and aggravated kidnapping, was returned to Travis County. *See* Tex.Code Crim.Proc.Ann. art. 31.08 (West Supp.1997). Thus, this appeal of the two non-capital convictions has been received from Travis County and this Court has jurisdiction rather than the Court of Criminal Appeals. *See Callins v. State*, 726 S.W.2d 555, 558 (Tex.Crim.App. 1986).[3]

## POINTS OF ERROR

Appellant has advanced thirteen points of error. First, appellant claims that his convictions for aggravated sexual assault and aggravated kidnapping violate the double jeopardy provisions of the federal and state constitutions. *See* U.S. Const. Amends. V & XIV; Tex. Const. art. I, § 14. Second and third, appellant challenges the sufficiency of the evidence to sustain these two convictions. In points of error four through eight, appellant complains of the admission of the testimony of Jackie Leroy Pierce, Billie Earl Smith, Linda Dupuis, Jerry Bedrick, and Officer Steglich. He contends such evidence was either inadmissable hearsay or was erroneously admitted in violation of Rules 403 and 404 of the Texas Rules of Criminal Evidence. Points of error nine, ten, and eleven contend that the trial court erred in failing to suppress evidence seized in the search of appellant's car on March 12, April 2, and May 19, 1992. In his twelfth point of error, appellant claims limitation of the right of cross-examination of Hank Worley, the accomplice witness, as to Worley's knowledge of the thirty-five year mandatory minimum punishment applicable to a life sentence for capital murder. Lastly, in point of error thirteen, appellant complains that the trial court erred in refusing to permit him to represent himself at the penalty stage of the trial.

## POINTS OF ERROR 4–13 OVERRULED

At the outset, we observe that points of error four through thirteen were raised in

---

[*] Before John F. Onion, Jr., Presiding Judge (retired), *Court of Criminal Appeals, sitting by assignment.* See Tex. Gov't Code Ann. § 74.003(b) (West 1988).

1. Tex. Penal Code Ann. § 22.021 (West 1994). The current code is cited for convenience. The applicable law at the time of the offense was Act of May 29, 1983, 68th Leg.R.S., ch. 977, § 3, 1983 Tex.Gen. Laws 5311, 5315, amended by Act of May 26, 1987, 70th Leg.R.S., ch. 573, 1987 Tex.Gen. Laws 2275–76; Act of July 18, 1987, 70th Leg. 2nd C.S., ch. 16, § 1, 4 1987 Tex.Gen. Laws 80–81 (since amended).

2. Tex. Penal Code Ann. § 20.04 (West 1994). *The current code is cited for convenience. The applicable law at the time of the offense was Act of May 24, 1973, 63rd Leg.R.S., ch. 399, § 1, 1973 Tex.Gen. Laws 883, 915.*

3. The foregoing also explains why this Court has jurisdiction rather than the Fourth Court of Appeals at San Antonio, the district which includes Guadalupe County.

the appeal of the capital murder conviction and were decided adversely to appellant's contentions by the Court of Criminal appeals. *See McDuff,* 939 S.W.2d 607. For that reason, we overrule appellant's points of error four through thirteen.

## LEGAL SUFFICIENCY—AGGRAVATED SEXUAL ASSAULT

Next, we turn to appellant's challenge of the legal sufficiency of the evidence to sustain the conviction for aggravated sexual assault. The District Attorney now candidly concedes that the evidence is insufficient to sustain the conviction as appellant contends. The testimony of Hank Worley made out a complete case against appellant for aggravated sexual assault, but Worley was an accomplice witness as a matter of law. No matter how complete a case may have been made by an accomplice witness's testimony and no matter how much credit the jury might have given it, that testimony alone cannot form the basis for a conviction, and a conviction so based must be reversed. *Paulus v. State,* 633 S.W.2d 827, 843 (Tex. Crim.App.1982) (on reh'g, dissenting opinion adopted as majority opinion). This is so because an accomplice witness is a discredited witness whose testimony should be received, viewed, and acted upon with caution because of any interest the witness may have and because it is considered evidence from a corrupt source. *Id.* An "accomplice witness" is someone who has participated with another before, during, or after the commission of the crime. *Villarreal v. State,* 576 S.W.2d 51, 56 (Tex.Crim.App.1978), *cert. denied,* 444 U.S. 885, 100 S.Ct. 176, 62 L.Ed.2d 114 (1979); *Tidrow v. State,* 916 S.W.2d 623, 631 (Tex. App.—Fort Worth 1996, no pet.). By virtue of article 38.14 of the Texas Code of Criminal Procedure, an accomplice witness's testimony must be corroborated. Tex.Code.Crim.Proc. Ann. art. 38.14 (West 1979).[4] The rule is one created by the legislature. It was not required at common law or now as a matter of federal constitutional law. *Thompson v. State,* 691 S.W.2d 627, 631 (Tex.Crim.App. 1984), *cert. denied,* 474 U.S. 865, 106 S.Ct.

184, 88 L.Ed.2d 153 (1985). The purpose of the rule is to assure that the jury does not consider the accomplice witness's testimony unless it finds that the accomplice witness is telling the truth and that other evidence corroborates the discredited witness. *See Tran v. State,* 870 S.W.2d 654, 658 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

In the instant case, there is no question that Worley was an accomplice witness as a matter of law. The trial court so instructed the jury in accordance with article 38.14. The difficulty presented is that the alleged victim of the aggravated sexual assault never testified; her body was never found. Our examination of the record confirms the position of both parties that the corroboration required by law is missing. Appellant's second point of error is sustained.

## LEGAL SUFFICIENCY—AGGRAVATED KIDNAPPING

In point of error three, appellant challenges the legal sufficiency of the evidence to sustain his conviction for aggravated kidnapping. Count III of the indictment alleged in pertinent part that on or about December 29, 1991, appellant:

> did then and there, intentionally and knowingly abduct another person, to wit: Colleen Reed and without Colleen Reed's consent, did then and there restrain Colleen Reed with intent to prevent the liberation of Colleen Reed, by secreting her and holding her in a place where she was not likely to be found, and the said Kenneth Allen McDuff did then and there intentionally and knowingly abduct the said Colleen Reed with intent to violate and abuse sexually the said Colleen Reed.

The standard for reviewing the legal sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found beyond a reasonable doubt the essential elements of the offense charged. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Vil-*

---

**4.** Article 38.14 provides that: "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to

connect the defendant with the offense committed. And the corroboration is not sufficient if it merely shows the commission of the offense."

lalon v. State, 791 S.W.2d 130, 132 (Tex. Crim.App.1990); Skillern v. State, 890 S.W.2d 849, 879 (Tex.App.—Austin 1994, pet. ref'd). The standard of review is the same in both direct and circumstantial evidence cases. Herndon v. State, 787 S.W.2d 408, 409 (Tex.Crim.App.1990). In our review of the legal sufficiency of the evidence, we must consider all the evidence that the jury was permitted, properly or improperly, to consider. Johnson v. State, 871 S.W.2d 183, 186 (Tex.Crim.App.1993), cert. denied, 511 U.S. 1046, 114 S.Ct. 1579, 128 L.Ed.2d 222 (1994); Rodriguez v. State, 819 S.W.2d 871, 872 (Tex. Crim.App.1991). In addition, the evidence is measured for sufficiency by looking at the indictment as incorporated in the court's charge to the jury. Fisher v. State, 887 S.W.2d 49, 53 (Tex.Crim.App.1994); Jones v. State, 815 S.W.2d 667, 668 (Tex.Crim.App. 1991). Skillern, 890 S.W.2d at 877. In its jury charge, the trial court tracked Count III of the indictment and also charged that Hank Worley was an accomplice witness as a matter of law, whose testimony had to be corroborated. Tex.Code Crim.Proc.Ann. art. 38.14 (West 1979).

The test for sufficient corroboration of an accomplice witness's testimony is to eliminate from consideration the testimony of the accomplice witness and then examine the other inculpatory evidence to ascertain whether it tends to connect the defendant with the offense. Burks v. State, 876 S.W.2d 877, 887 (Tex.Crim.App.1994), cert. denied, 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995); Paulus, 633 S.W.2d 827 at 843; Edwards v. State, 427 S.W.2d 629, 632 (Tex.Crim.App. 1968).

It is not necessary that the corroboration directly link the accused to the crime or be sufficient in itself to establish guilt. Paulus, 633 S.W.2d at 843. Rather, the non-accomplice evidence merely has to tend to connect the defendant to the offense charged. Reed v. State, 744 S.W.2d 112, 126 (Tex.Crim.App. 1988); Granger v. State, 683 S.W.2d 387, 392 (Tex.Crim.App.1984), cert. denied, 472 U.S. 1012, 105 S.Ct. 2713, 86 L.Ed.2d 728 (1985). All the facts and circumstances in evidence may be looked to as furnishing the corroboration necessary and the evidence may be direct or circumstantial. Gosch v. State, 829 S.W.2d 775, 777 (Tex.Crim.App.1991), cert. denied, 509 U.S. 922, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993). If the combined cumulative weight of the incriminating evidence furnished by the non-accomplice witnesses tends to connect an accused with the commission of the offense, the mandate of article 38.14 has been fulfilled. Id. at 777; Paulus, 633 S.W.2d at 843. Apparently insignificant incriminating circumstances may sometimes afford satisfactory evidence corroborating the accomplice witness's testimony. Muñoz v. State, 853 S.W.2d 558, 559 (Tex.Crim.App. 1993); Paulus, 633 S.W.2d at 844. Each case must be considered on its own facts and circumstances. Paulus, 633 S.W.2d at 844.

## TESTIMONY OF ACCOMPLICE WITNESS

The testimony of Hank Worley made out a complete case against appellant for aggravated kidnapping. He testified that he was with appellant in late December 1991 when appellant forcibly abducted Colleen Reed from a car wash in Austin and placed her in appellant's car. He described in some detail how appellant sexually assaulted Reed in the back seat of the car while he drove. The two men switched places and Worley also sexually assaulted Reed. After they stopped the car, appellant again sexually assaulted the victim on the hood of the car. Worley testified that appellant burned Reed several times with a lit cigarette on or in her vagina. Worley related that, after the stop and the continued sexual assault, appellant made a remark about killing Reed, slapped her and caused her to fall and bounce on the ground. At this time, Reed's hands were bound behind her back. Worley indicated that the slap sounded as if a tree limb or something was breaking. Appellant picked up Reed and placed her in the trunk of the car. Worley thought he heard Reed moaning, but after the lid on the trunk was closed he did not hear any noise. On the way to Worley's house, appellant asked for a pocket knife and a shovel and said that "he was going to use her up." Appellant left Worley at his house. Worley never saw Reed again.

## NON–ACCOMPLICE TESTIMONY

We must examine the record to determine if there is independent inculpatory evidence tending to connect appellant to the offense. The record shows that at the time of the trial Reed had been missing for two years. There was non-accomplice evidence that appellant was attending the Texas State Technical College in Waco in 1991 and that periodically he made automobile trips to Austin with various companions. Four days before the offense in question, appellant was in Austin with a companion (other than Worley) looking for a particular prostitute. They stopped a 12 or 13–year–old girl and asked her if she knew the woman. She did not. As they drove away, appellant suggested, "Why don't we just take her?"

Four non-accomplice witnesses testified that on the night of December 29, 1991, they heard a woman's scream coming from the Austin car wash in question. The scream was followed by the sound of a car door or trunk being slammed. A car then drove out of the car wash going the wrong way on a one-way street. One of these witnesses identified appellant as the driver of that car. Several minutes earlier, some of these witnesses had seen the same car occupied by two men driving the wrong way on another one-way street in the same area.

Reed's unoccupied soap-sudded car was found at the otherwise deserted car wash. Her keys, purse, and some perishable groceries were found inside her car. Reed's boyfriend testified that when he talked with her by phone on the night of December 29, she told him that she wanted to wash her car that night. Reed's sister testified that since that night there had been no activity in Reed's bank and charge accounts that could be attributed to Reed. The sister indicated that nothing in Reed's apartment indicated that Reed was going on a trip, and she was unaware of any reason why Reed would disappear.

Appellant was seen pushing his car into a motel parking lot in Waco on March 1, 1992, and leaving it there. A Department of Public Safety (DPS) serologist testified that some items taken from the car were found to contain small amounts of human blood. A DPS criminologist testified that five hairs recovered from appellant's car had the same microscopic characteristics as the hair known to be Reed's.

A minister/supervisor of a rescue mission shelter for homeless men in Kansas City, Missouri, testified that appellant checked into the shelter on March 17, 1992, using an alias. There was also testimony that when arrested on May 4, 1992, in Kansas City, appellant was using an assumed name and false identification.

Eliminating Worley's testimony, the non-accomplice testimony established that appellant was identified as the driver of the car seen leaving the car wash shortly after a woman screamed and shortly before Reed's car was found abandoned in the car wash. Appellant's car had been seen that night in the same area going the wrong way on a one-way street. Proof that the accused was at or near the scene of the crime at around the time of the offense may not be sufficient alone, but when coupled with other suspicious circumstances may tend to connect the accused to the crime. *See Burks,* 876 S.W.2d at 888; *Brown v. State,* 672 S.W.2d 487, 489 (Tex.Crim.App.1984). Motive and the opportunity of the accused to commit the crime alone do not furnish the necessary corroboration, but they are factors to be considered with other evidence tending to connect an accused with the crime. *Leal v. State,* 782 S.W.2d 844, 852 (Tex.Crim.App.1989). There was independent evidence that appellant frequently came to Austin with other individuals, and at least on Christmas Day 1991, he was there looking for a prostitute, and suggested taking a young girl off the street.

Appellant's Thunderbird automobile, identified by Worley as the one used · in the kidnapping, was abandoned on the parking lot of a Waco motel. It was impounded on March 1, 1992, and eventually was searched. Five hairs taken from the interior of the vehicle had the same microscopic characteristics as the known hair of the victim. By March 17, 1992, appellant was in Kansas City, Missouri, where he checked into a shelter using the alias of Richard Fowler. He was arrested in Kansas City on May 4, 1992. Flight is admissible as a circumstance from

which an inference of guilt may be drawn. *Foster v. State*, 779 S.W.2d 845, 859 (Tex. Crim.App.1989). Flight alone, however, is not adequate corroboration of an accomplice witness, *Jackson v. State*, 516 S.W.2d 167, 171 n. 1 (Tex.Crim.App.1974), nor is the mere fact that an accused is apprehended in another state. *See Cruz v. State*, 690 S.W.2d 246, 251 (Tex.Crim.App.1985); *Nolley v. State*, 368 S.W.2d 218, 220 (Tex.Crim.App.1963). Flight, together with other suspicious circumstances, has been held to be sufficient corroboration of the accomplice witness's testimony. *Cockrum v. State*, 758 S.W.2d 577, 582 (Tex.Crim.App.1988), *cert. denied*, 489 U.S. 1072, 109 S.Ct. 1358, 103 L.Ed.2d 825 (1989). In *Cockrum*, the defendant fled to another state and gave a false name that, together with other circumstances, was sufficient to provide the necessary corroboration. Even a lapse of time between the commission of the offense and the flight does not always adversely affect the admissibility of evidence of flight. *Foster*, 779 S.W.2d at 859. In the instant case, the evidence of flight was admitted as relevant and appellant did not satisfy his burden of showing the flight was unrelated to the charged offense. *See Burks*, 876 S.W.2d at 903–04. While the flight was approximately two months after the alleged offense, it appears to have been shortly after the Thunderbird had been taken into custody by the police during an ongoing investigation into this highly publicized case.

Viewing all the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt all the essential elements of the aggravated kidnapping charge and that the testimony of the accomplice witness was corroborated as required by article 38.14 and the court's charge. *See Colella v. State*, 915 S.W.2d 834, 839 (Tex. Crim.App.1995); *Richardson v. State*, 879 S.W.2d 874, 880 (Tex.Crim.App.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 741, 130 L.Ed.2d 643 (1995). The third point of error is overruled.

### DOUBLE JEOPARDY

■ In his first point of error, appellant urges that his "convictions of aggravated sexual assault and aggravated kidnapping and the life sentences imposed violate the Double Jeopardy provisions of the Fourteenth Amendment to the United States Constitution and of Article I, section 14 of the Texas Constitution." Read literally, it would appear appellant is complaining that the imposition of both life sentences arising out of a single trial would violate the double jeopardy provisions. The real thrust of appellant's contention, however, is that the double jeopardy provisions were violated when the life sentences or either of them were imposed after appellant's conviction for capital murder in the same trial.

The point of error is, of course, multifarious. By combining more than one contention in a single point of error, an appellant risks rejection on the ground that nothing is presented for review. *See Sterling v. State*, 800 S.W.2d 513, 521 (Tex.Crim.App.1990), *cert. denied*, 501 U.S. 1213, 111 S.Ct. 2816, 115 L.Ed.2d 988 (1991). Moreover, appellant does not separately argue his federal and state constitutional issues and proffers no argument or authority to support a holding that, in the context of this cause, the Texas Constitution's double jeopardy clause differs meaningfully from the Fifth and Fourteenth Amendments or offers broader protection. Thus, any claim based on state constitutional provisions are inadequately briefed and are not properly presented for our consideration. *Ex parte Granger*, 850 S.W.2d 513, 516 n.6 (Tex.Crim.App.1993); *Narvaiz v. State*, 840 S.W.2d 415, 432 (Tex.Crim.App.1992).[5] In light of the insufficiency of evidence to sustain the conviction for aggravated sexual assault and the interest of judicial economy and justice, we will consider appellant's double jeopardy claim regarding the aggravated kidnapping conviction, but will conduct our analysis under the federal constitution only.

The Fifth Amendment to the United States Constitution provides in part: "[N]or shall any person be subject to the same

5. Appellant's counsel explains the lack of separate argument on the basis that the federal and state double jeopardy provisions are "conceptu-

ally identical," citing *Phillips v. State*, 787 S.W.2d 391, 393 n. 2 (Tex.Crim.App.1990).

offence to be twice placed in jeopardy of life or limb." This guarantee was made applicable to the states by the due process clause of the Fourteenth Amendment. *See Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969). The federal constitutional guarantee serves to protect against: (1) a second prosecution for the same offense after acquittal; (2) a second conviction for the same offense after conviction; and (3) multiple punishments for the same offense. *See United States v. Halper,* 490 U.S. 435, 439–40, 109 S.Ct. 1892, 1896–97, 104 L.Ed.2d 487 (1989); *Illinois v. Vitale,* 447 U.S. 410, 415, 100 S.Ct. 2260, 2264, 65 L.Ed.2d 228 (1980); *Cervantes v. State,* 815 S.W.2d 569, 572 (Tex.Crim.App.1991); *Ex parte Busby,* 921 S.W.2d 389, 391 (Tex. App.—Austin 1996, pet. ref'd).

■ The convictions in the instant case were based on multiple counts in one indictment and were obtained in a single trial. Appellant invokes the third of the above described protections which protects against being punished more than once for a single offense. Appellant did not raise his double jeopardy claim in the court below, but the alleged violation may be raised for the first time on appeal. *See Ex parte Myers,* 618 S.W.2d 365, 367 n. 1 (Tex.Crim.App.1981); *Shaffer v. State,* 477 S.W.2d 873, 876 (Tex. Crim.App.1971); *York v. State,* 848 S.W.2d 341, 342 (Tex.App.—Texarkana 1993, pet. ref'd). When a defendant or appellant raises the issue of double jeopardy, he bears the burden of proving his claim. *Coleman v. State,* 918 S.W.2d 39, 43 (Tex.App.—Houston [1st Dist.] 1996), *aff'd,* 940 S.W.2d 96 (Tex. Crim.App.1996, rehearing pending).

To determine whether a prosecution violates the protection against multiple punishments, courts have long applied the same-elements test of *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), the seminal case in this area. *See Ex parte Herron,* 790 S.W.2d 623, 624 (Tex.Crim.App.1990). The rule established in *Blockburger* was that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each

provision required proof of a fact which the other did not." *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182; *Herron,* 790 S.W.2d at 624. The *Blockburger* test is simply "a rule of statutory construction," a guide to determining whether the legislature intended multiple punishment. *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983).

■ At a trial there may be a substantial overlap in the proof of each offense; however, it is the separate statutory elements of each offense that must be examined under the *Blockburger* test. *Brown v. Alabama,* 619 F.2d 376, 378 (5th Cir.1980); *State v. Marshall,* 814 S.W.2d 789, 791 (Tex.App.— Dallas 1991, pet. ref'd). When a defendant is tried under two separate statutes in one proceeding, *Blockburger* is the applicable test, and the court is required to focus on the "elements of the offense charged, not on the evidence adduced at trial." *United States v. Rodriguez,* 612 F.2d 906, 919 (5th Cir.) *sub nom Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *see also Flores v. State,* 906 S.W.2d 133, 136 (Tex.App.—San Antonio 1995, no pet.); 22 C.J. S., Criminal Law, § 246 at 296.

*Parrish v. State,* 869 S.W.2d 352 (Tex. Crim.App.1994), reexamined what is meant by the "same elements" test after *United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). The *Parrish* court stated:

> We likewise think it reasonably clear from the various opinions in *Dixon* that the essential elements *relevant to a jeopardy inquiry* are those of the charging instrument, not of the penal statute itself. Statutory elements will, of course, always make up a part of the accusatory pleading, but additional nonstatutory allegations are necessary in every case to specify the unique offense with which the defendant is charged.

*Parrish,* 869 S.W.2d at 354 (emphasis added).

Where the issue is whether the Fifth Amendment guarantee against multiple punishment bars convictions on multi-count offenses in the same trial, we find *Missouri v. Hunter instructive.* 459 U.S. at 359, 103

S.Ct. at 673 *Hunter* held that the double jeopardy clause does not impose a limitation upon the legislative prerogative to "prescribe the scope of punishment." 459 U.S. at 368, 103 S.Ct. at 679. The Missouri Supreme Court had concluded that the imposition of multiple sentences under two statutory provisions that it construed to define the "same offense" under the *Blockburger* test was jeopardy barred, despite express legislative authorization of multiple punishment. The United States Supreme Court reversed, holding that in the multiple punishment context, *Blockburger* is no more than a rule of statutory construction, useful in discerning the legislative intent as to the scope of punishment where that intent is not otherwise manifested. *Blockburger* does not operate to trump "clearly expressed legislative intent." *Hunter*, 459 U.S. at 368, 103 S.Ct. at 679; *Ex parte Kopecky*, 821 S.W.2d 957, 959 (Tex. Crim.App.1992).

In *Hunter*, the Court explained:

Whereas here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

*Hunter*, 459 U.S. at 368–69, 103 S.Ct. at 679; *see also Garrett v. United States*, 471 U.S. 773, 779, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764 (1985) ("We have recently indicated that the *Blockburger* rule is not controlling when the legislative intent is clear from the face of the statute *or the legislative history*.") (emphasis added).[6]

The sequence of the analysis is not important. A court should derive the same result whether it applies the *Blockburger* test and then examines legislative intent or first looks to legislative intent in the hope of obviating the need for further analysis. *Hunter*, 459 U.S. at 368–69, 103 S.Ct. at 679; *Todd*, 917 P.2d at 679 n. 4.

Section 19.03 of the Texas Penal Code in effect at the time of the alleged offenses in the instant case defined capital murder as an intentional or knowing killing under section 19.02(a)(11), the traditional definition of murder, accompanied by one of the listed aggravating or capital factors focusing on the identity of the victim and the dangerousness of the actor's conduct.[7] Section 19.03 and its immediate predecessor were enacted in response to the decision in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), holding the death penalty unconstitutional in the manner in which it was applied in Texas and certain other states. Section 19.03 is a separate and distinct offense with a mandatory penalty of death or life imprisonment. *See* Tex. Penal Code Ann. § 12.31 (West 1994).[8] There are standards to guide the jury. *See* Tex.Code Crim.Proc.Ann. art. 37.071 (West Supp.1997). The offense is one of gradation, permitting the imposition of the death penalty only for the most serious of-

**6.** We do not agree that *Dixon* overruled *Hunter* and its antecedents *sub silentio* or otherwise. The various opinions in *Dixon* demonstrate that for a defendant convicted of several offenses at the same trial, *Hunter* retains the allegiance of a clear majority of the Supreme Court justices as the embodiment of the proper federal double jeopardy analysis. *See Todd v. State*, 884 P.2d 668, 677 (Alaska App.1994), *aff'd*, 917 P.2d 674, 678 n. 4 (Alaska 1996). Justice Scalia wrote the lead opinion in *Dixon*. Some language therein might be indicative of only a unitary test based on *Blockburger* for determining whether two offenses are the same offense for double jeopardy purposes. *See Dixon*, 509 U.S. at 696, 113 S.Ct. at 2856. However, before such interpretation is too readily accepted, we note that Justice Scalia dissenting in *Dep't of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 801 n. 1, 114 S.Ct. 1937, 1957 n. 1, 128 L.Ed.2d 767 (1994), cited *Hunter*, 459 U.S. at 368–69, 103 S.Ct. at 679,

with approval and implicitly acknowledged that the double jeopardy prohibition against multiple punishments was not coextensive with the *Blockburger* test. He wrote: "Thus, in the context of criminal proceedings, legislative authorized multiple punishments are permissible if imposed in a single proceeding, but impermissible if imposed in successive proceedings."

**7.** Act of May 28, 1973, 63d Leg., R.S., Ch. 426, art. 2, § 1, 1973 Tex.Gen. Laws 1122, 1123, as amended Act of May 29, 1983, 68th Leg., R.S., Ch. 977, § 6, 1983 Tex.Gen. Laws 5311, 5317, as amended Act of April 16, 1985, 69th Leg., R.S., Ch. 44, § 1, 1985 Tex. General Laws 5311, 5317, Tex. Penal Code § 19.03, since amended. (Tex. Penal Code Ann. § 19.03 (West 1994).)

**8.** The current code is cited for convenience.

fenses, an aggravated form of murder listed in one of its subdivisions.

As pertinent to the instant case, the applicable section 19.03 provided: "(a) a person commits an offense if he commits murder as defined under section 19.02(a)(1) of this code and, (2) the person intentionally commits the murder in the course of committing or attempting to commit kidnapping, burglary, robbery, aggravated sexual assault, or arson."

The first paragraph of count I of the indictment alleged in pertinent part that:

> Kenneth Allen McDuff ... in the course of committing or attempting to commit aggravated sexual assault or aggravated kidnapping of Colleen Reed did then and there intentionally cause the death of an individual, Colleen Reed, by a manner and means unknown to the Grand Jurors.

The second paragraph of Count I repeated the pertinent language of paragraph one above except the cause of death was alleged "by hitting her in the face with a hand." Thus, the count alleged for our purposes here the offense of capital murder in the course of committing or attempting to commit aggravated kidnapping. Criminal attempt is defined: "A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." Tex. Penal Code Ann. § 15.01(a) (West 1994).[9]

With regard to the allegations of capital murder in the instant case, we note that it is unnecessary to allege the constituent elements of the aggravating feature that elevate the offense of murder to capital murder. *Alba v. State*, 905 S.W.2d 581, 585 (Tex.Crim. App.1995); *Gribble v. State*, 808 S.W.2d 65, 73 (Tex.Crim.App.1990), *cert. denied*, 501 U.S. 1232, 111 S.Ct. 2856, 115 L.Ed.2d 1023 (1991); *Beathard v. State*, 767 S.W.2d 423, 431 (Tex.Crim.App.1989). The phrase "in the course of committing or attempting to commit" as used in section 19.03(a)(2) is not

defined in the Penal Code. *Riles v. State*, 595 S.W.2d 858, 862·(Tex.Crim.App.1980). The phrase has been judicially defined to mean "conduct occurring in an attempt to commit, during the commission or in the immediate flight after the attempt or commission of the offense." *Id; McGee v. State*, 774 S.W.2d 229, 234 (Tex.Crim.App.1989); *see also Barnes v. State*, 845 S.W.2d 364, 367 (Tex. App.1992). When the phrase is alleged in a capital murder case, it does not necessarily require proof of a completed underlying offense or completed attempt. *See Flores v. State*, 906 S.W.2d 133, 139 (Tex.App.—San Antonio 1995, no pet.).

A person who intentionally or knowingly abducts another person is guilty of kidnapping. Tex. Penal Code Ann. § 20.03 (West 1994).[10] The offense becomes aggravated kidnapping if the offense is committed with the intent to: (1) hold the victim for ransom or reward; (2) use the victim as a shield or hostage; (3) facilitate the commission of a felony or the flight after the attempt or commission of a felony; (4) inflict bodily injury on, violate, or abuse the victim sexually; (5) terrorize the victim or a third person; or (6) interfere with the performance of any governmental or political function. Tex. Penal Code Ann. § 20.04(a) (West 1994).[11] Aggravated kidnapping is a first degree felony "unless the actor voluntarily releases the victim alive and in a safe place, in which event it is a second degree felony." Tex. Penal Code. Ann. § 20.04(a) (West 1994). Kidnapping is a separate and distinct crime under the Penal Code. *Gribble*, 808 S.W.2d at 71. It logically follows that aggravated kidnapping is also a separate crime.

Count III, paragraph one of the indictment alleged in pertinent part that:

> Kenneth Allen McDuff did then and there, intentionally and knowingly abduct another person, to wit: Colleen Reed and without Colleen Reed's consent, did then and there restrain Colleen Reed with intent to prevent the liberation of Colleen Reed, by secreting her and holding her in a place

---

9. The current code is cited for convenience. Section 15.01(a) has remained unchanged from its former version.

10. The current code is cited for convenience.

11. See note 2.

where she was not likely to be found, and the said Kenneth Allen McDuff did then and there intentionally and knowingly abduct the said Colleen Reed with intent to violate and abuse sexually the said Colleen Reed."

This count alleged one form of aggravated kidnapping under section 20.04(a)(4). It utilized one meaning of "abduct"[12] and alleged one of the required intents to make the offense aggravated kidnapping.

In applying the *Blockburger* test, we observe that the State was required to prove appellant intentionally or knowingly intended to cause the death of Reed in order to convict under count I. The capital murder allegation required an intent to kill which was not required as an element of aggravated kidnapping. The aggravated kidnapping allegations required the specific intent to violate and sexually abuse. Because each offense has a unique element, they are not the "same offense" under *Blockburger*. *See Scott v. State*, 861 S.W.2d 440, 446 (Tex.App.—Austin 1993, no pet.)

Regardless of whether the *Blockburger* test has been met, the touchstone is legislative intent. *See Kopecky*, 821 S.W.2d at 959. The question is whether the legislature intended that an accused in appellant's position be punished both for capital murder in the course of committing or attempting to commit some form of aggravated kidnapping and for the aggravated kidnapping with the specific intent to violate and sexually abuse. We hold that this was legislature's intent.

Capital murder and aggravated kidnapping are separate and distinct offenses found in different chapters of the Penal Code providing dissimilar penalties and protecting against different evils. Each statute has its own unique elements. Different types of capital murder may be alleged under section 19.03 or even under section 19.03(a)(2) alone. Different types of aggravated kidnapping may be alleged depending on the specific intent involved. The language structure and legislative history of the statutes clearly reflect the legislative intent that multiple punishments be authorized for capital murder

and aggravated kidnapping where the convictions are obtained in a single trial. It follows that the legislature intended aggravated kidnapping to be a separate criminal offense which is punishable in addition to any penalty imposed in a capital murder case where the underlying or predicate offense may involve some form of committing or attempting to commit kidnapping or aggravated kidnapping.

█ In the instant case, the sentences were made to run concurrently because they arose out of the same criminal episode and were tried in the same criminal action. *See* Tex. Penal Code Ann. § 63.03 (West 1994). Concurrent sentences do not foreclose a finding of double jeopardy or call for such finding. *See Ex parte Scelles*, 511 S.W.2d 300, 302 (Tex.Crim.App.1974); *York v. State*, 848 S.W.2d 341, 342 (Tex.App.—Texarkana 1993, pet. ref'd) (citing *United States v. Osunegbu*, 822 F.2d 472, 481 (5th Cir.1987)) Appellant's first point of error is overruled.

The judgment of conviction for aggravated kidnapping is affirmed. The judgment for conviction of aggravated sexual assault is reversed and an acquittal ordered.

---

**12.** Tex. Penal Code Ann. § 20.01(2)(A) (West 1994).