

# NUMBER 13-06-341-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

GONZALO ARTEMIO LOPEZ,                                               Appellant,

v.

THE STATE OF TEXAS,                                                  Appellee.

## On appeal from the 92nd District Court
## of Hidalgo County, Texas

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Vela
### Memorandum Opinion by Justice Vela

A jury found appellant, Gonzalo Artemio Lopez, guilty of capital murder[1] (count 1) and aggravated kidnapping[2] (count 2), and the trial court assessed punishment at life

---

[1]*See* TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon Supp. 2008).

[2]*See* TEX. PENAL CODE ANN. § 20.04(a)(1), (b) (Vernon 2003).

imprisonment and fifteen years' imprisonment, respectively. The sentences are to run concurrently. In three issues, Lopez argues the trial court erred in admitting his written confession into evidence, questioning witnesses during the suppression hearing, and sentencing him on counts 1 and 2 in violation of his double-jeopardy protection against multiple punishments for the same offense. We affirm.

## I. Factual Background

The evidence[3] showed that between 4:30 a.m. and 4:45 a.m. on April 23, 2005, Lopez was arrested for cocaine possession and taken to the Starr County sheriff's office where Romeo Ramirez, Jr., an investigator for that office, interviewed him. Prior to conducting the interview, Ramirez read Lopez the *Miranda*[4] warnings from a preprinted form as follows:

1. You have the right to remain silent and not make any statement at all and that any statement you make may be used against you at your trial;

2. Any statement you make may be used as evidence against you in court;

3. You have the right to have a lawyer present, to advise you prior to and during any questioning;

4. If you're unable to employ a lawyer, you have the right to have a lawyer to appointed to advise you prior to and during any questioning; and

---

[3]When considering a suppression issue, we generally consider only evidence adduced at the suppression hearing because the ruling was based on it rather than evidence introduced later. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996). This general rule, however, is inapplicable when the parties consensually relitigate the suppression issue during the trial on the merits. *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007); *Rachal*, 917 S.W.2d at 809. When the State raises the issue at trial either without objection or with subsequent participation in the inquiry by the defense, the defendant has made an election to reopen the evidence, and consideration of the relevant trial testimony is appropriate in our review. *Rachal*, 917 S.W.2d at 809. Here, both the prosecutor and defense counsel asked the witnesses questions during the trial on the merits regarding the circumstances surrounding Lopez's statement. Thus, Lopez participated in the relitigation of the issue during trial, and we will therefore consider the evidence adduced at both the suppression hearing and the trial on the merits. *See id*.

[4]*See Miranda v. Arizona*, 384 U.S. 436 (1966).

2

5. You have the right to terminate the interview at any time.[5]

Ramirez testified that Lopez understood these warnings and that Lopez placed his initials next to each warning. Lopez signed the preprinted form in Ramirez's presence at 5:20 a.m. that day. Lopez agreed to waive these rights, but told Ramirez that he wanted to speak to an FBI agent.

Christopher Lee, an FBI agent, arrived at the Starr County sheriff's office about 8:30 a.m. that day. Prior to the interview, Lee read Lopez the warnings from the same preprinted form that Ramirez used to admonish Lopez. Lee testified that Lopez understood the warnings and that Lopez agreed to waive his rights and talk to him. During the interview, Lee advised Lopez that Ranger Escalon was en route to interview Lopez about a warrant out of Weslaco.

About 12:50 p.m. that day, while Lee was in the interview room with Lopez, Ranger Victor Escalon, Jr., came into the interview room and began to interrogate Lopez. Lopez gave Escalon a written confession in which Lopez stated that a week before March 23, 2005, he had spoken to Juan Lerma, who was associated with the La Mana drug cartel from Tamaulipas, Mexico. According to the confession, Lerma told Lopez that Lupe Ramirez owed the cartel $40,000 and Lerma asked Lopez to "pick him up and collect the $40,000." Lopez and an accomplice named "Rick" went to Lupe's house, abducted him and wrapped him in duct tape, and then drove him to Lopez's mother's house in Weslaco. Lupe could only produce three trucks, $8,000, and thirty pounds of "weed" to cover the $40,000 debt. Acting on Lerma's order to kill Lupe, Lopez and Rick drove Lupe to a

---

[5]These are the warnings required by article 38.22, section 2(a) of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(a)(1)-(5) (Vernon 2005).

3

"monte"[6] where they dug a grave for Lupe's body.  After digging the grave, they put Lupe in the hole, and Lopez hit Lupe with a pick, killing him.  They buried Lupe and left the scene.

After Lopez signed his written confession at 8:11 p.m. that day, he agreed to take Ranger Escalon to where he and Rick had buried Lupe.  At the scene, Escalon and other law-enforcement personnel exhumed Lupe's body.

The defense did not call any witnesses to testify at either the suppression hearing or the guilt-innocence phase of the trial.

## II. Discussion

*A. Written Confession*

By issue one, Lopez argues the trial court erred in admitting his written confession into evidence, in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966).  Lopez filed a pre-trial motion to suppress his confession, and after a pre-trial suppression hearing, the trial court denied the motion.  These actions alone would have preserved the suppression issue for review without further objection by Lopez during the trial.  At trial, however, when the State sought admission of Lopez's written confession, defense counsel stated he had "No objection, judge."  The law is well settled that, when a defendant affirmatively asserts during trial that he has "no objection" to the admission of the complained-of evidence, any error in the admission of the evidence is waived even if the defendant had previously preserved the error by a suppression motion and adverse ruling.  *Moody v. State*, 827 S.W.2d 875, 889 (Tex. Crim. App. 1992); *Dean v. State*, 749 S.W.2d 80, 82-83 (Tex. Crim. App. 1988); *Harris v. State*, 656 S.W.2d 481, 484 (Tex. Crim. App. 1983); *McGrew v.*

---

[6]According to Ranger Escalon, the term "monte" means "brushy area."

4

*State*, 523 S.W.2d 679, 680-81 (Tex. Crim. App. 1975). Because counsel affirmatively stated he had no objection to the introduction of the confession, we hold the complaint is not preserved. Issue one is overruled.

*B. Court's Questioning of Witnesses*

In issue two, Lopez argues the trial court erred by questioning the State's witnesses during the suppression hearing. During the suppression hearing, the trial judge, on numerous occasions, questioned the State's witnesses in an effort to understand their role in the case and whether Lopez received the *Miranda* warnings prior to giving his written confession. However, Lopez's counsel did not object to the judge's questioning of the witnesses. In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. TEX. R. APP. P. 33.1(a). When no objection is made, remarks and conduct of the court may not be subsequently challenged unless they are fundamentally erroneous. *Moreno v. State*, 900 S.W.2d 357, 360 (Tex. App.–Texarkana 1995, no pet.) (citing *Brewer v. State*, 572 S.W.2d 719, 721 (Tex. Crim. App. 1978)). Fundamental error is error that is so egregious and creates such harm that it deprives the defendant of his or her right to a fair and impartial trial. *Almanza v. State*, 686 S.W.2d 157, 171-72 (Tex. Crim. App. 1985) (op. on reh'g).

In *Blue v. State*, 41 S.W.3d 129, 131 (Tex. Crim. App. 2000) (plurality op.), the trial court made comments in front of the jury that demonstrated he was not fair or impartial. A plurality of the court of criminal appeals held that a trial judge's comments "which tainted [the defendant's] presumption of innocence in front of the venire, were fundamental error of constitutional dimension and required no objection." *Id*. at 132. In a concurring opinion,

another judge wrote that the right at issue was the fundamental right to an impartial judge and, as such, no objection was required.  *Id*. at 138 (Keasler, J., concurring).

A trial judge has broad discretion in maintaining control and expediting a trial and may clear up a point of confusion.  *Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001).  Here, the record does not reveal that the trial judge, by questioning the State's witnesses, became so entangled as an advocate that he could not at the end of the proceeding make an objective finding.  *See Moreno,* 900 S.W.2d at 360.  Nor can we say the judge's questions indicated he abandoned his proper role as a neutral arbiter and became an advocate for the State.  *See Bethany v. State*, 814 S.W.2d 455, 462 (Tex. App.–Houston [14th Dist.] 1991, pet. ref'd) (when trial court abandons position as neutral arbiter and assumes role of advocate, fundamental fairness is lost).  After examining the record of the suppression hearing, we conclude there is no showing of fundamental error.

Even if counsel had objected to the judge's questioning of the witnesses, the record shows the judge did not err in doing so because his questions were for the purpose of clarifying an issue before the court and were, therefore, permissible.  *See Brewer*, 572 S.W.2d at 721 (trial court may question witness for purpose of clarifying issue before the court).  Issue two is overruled.

*C. Double Jeopardy*

In issue three, Lopez argues that the trial court erred in sentencing him on counts 1 and 2 in violation of his double-jeopardy protection against multiple punishments for the same offense.[7]  Lopez's convictions for capital murder (count 1) and aggravated kidnapping (count 2) were based on multiple counts in one indictment and were obtained

---

[7]Lopez did not raise his double jeopardy claim in the court below, but the alleged violation may be raised for the first time on appeal.  *McDuff v. State*, 943 S.W.2d 517, 524 (Tex. App.–Austin 1997, pet. ref'd).

in a single trial.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *Langs v. State*, 183 S.W.3d 680, 685 (Tex. Crim. App. 2006). A multiple-punishments claim can arise in the context of "punishing the same criminal act twice under two distinct statutes when the legislature intended the conduct to be punished only once (for example, causing a single death by committing both intoxication manslaughter and involuntary manslaughter)." *Id*.

To determine whether a prosecution violates the protection against multiple punishments, courts have applied the same-elements test of *Blockburger v. United States,* 284 U.S. 299, 304 (1932). *Langs,* 183 S.W.3d at 685; *see Ex parte Herron,* 790 S.W.2d 623, 624 (Tex. Crim. App. 1990). The *Blockburger* rule is that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other did not." *Blockburger,* 284 U.S. at 304; *Herron,* 790 S.W.2d at 624. The *Blockburger* test is simply "a rule of statutory construction," a guide to determining whether the legislature intended multiple punishment. *Missouri v. Hunter,* 459 U.S. 359, 366 (1983).

At a trial there may be a substantial overlap in the proof of each offense; however, it is the separate statutory elements of each offense that must be examined under the *Blockburger* test. *McDuff v. State*, 943 S.W.2d 517, 524 (Tex. App.–Austin 1997, pet. ref'd); *State v. Marshall,* 814 S.W.2d 789, 791 (Tex. App.–Dallas 1991, pet. ref'd). When a defendant is tried under two separate statutes in one proceeding, *Blockburger* is the

7

applicable test, and the court is required to focus on the elements of the offense charged, not on the evidence elicited at trial. *McDuff*, 943 S.W.2d at 524; *see also Flores v. State*, 906 S.W.2d 133, 136 (Tex. App.–San Antonio 1995, no pet.).

*Parrish v. State,* 869 S.W.2d 352 (Tex. Crim. App. 1994), re-examined what is meant by the "same elements" test after *United States v. Dixon,* 509 U.S. 688 (1993). The *Parrish* court stated:

> We likewise think it reasonably clear from the various opinions in *Dixon* that the essential elements *relevant to a jeopardy inquiry* are those of the charging instrument, not of the penal statute itself. Statutory elements will, of course, always make up a part of the accusatory pleading, but additional nonstatutory allegations are necessary in every case to specify the unique offense with which the defendant is charged.

*Parrish,* 869 S.W.2d at 354 (emphasis added).

When the issue is whether the Fifth Amendment guarantee against multiple punishment bars convictions on multi-count offenses in the same trial, we find *Missouri v. Hunter* instructive. 459 U.S. at 359. *Hunter* held that the double-jeopardy clause does not impose a limitation upon the legislative prerogative to "prescribe the scope of punishment." 459 U.S. at 368. In *Hunter*, the Missouri Supreme Court had concluded that the imposition of multiple sentences under two statutory provisions that it construed to define the "same offense" under the *Blockburger* test was jeopardy barred, despite express legislative authorization of multiple punishment. The United States Supreme Court reversed, holding that in the multiple-punishment context, *Blockburger* is no more than a rule of statutory construction, useful in discerning the legislative intent concerning the scope of punishment when that intent is not otherwise manifested. *Blockburger* does not operate to trump "clearly expressed legislative intent." *Hunter,* 459 U.S. at 368; *Ex parte Kopecky,* 821 S.W.2d 957, 959 (Tex. Crim. App. 1992).

8

In *Hunter,* the Court explained:

> Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under *Blockburger,* a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

*Hunter,* 459 U.S. at 368-69; *see also Garrett v. United States,* 471 U.S. 773, 779 (1985) ("We have recently indicated that the *Blockburger* rule is not controlling when the legislative intent is clear from the face of the statute *or the legislative history.*") (emphasis added).

*1. Capital Murder*

Section 19.03 of the penal code defines capital murder as an intentional or knowing killing under section 19.02(b)(1),[8] the traditional definition of murder, accompanied by one of the listed aggravating or capital factors. *See* TEX. PENAL CODE ANN. § 19.03(a)(1)-(9) (Vernon Supp. 2008). Section 19.03 is a separate and distinct offense with a mandatory penalty of death or life imprisonment. *Id.* § 12.31(a). There are standards to guide the jury. *See* TEX. CODE CRIM. PROC. ANN. art. 37.071, § 2 (Vernon 2006). The offense is one of gradation, permitting the imposition of the death penalty only for the most serious offenses.

Relevant to the instant case, the applicable section of 19.03 provides: "(a) A person commits an offense if the person commits murder as defined under Section 19.02(b)(1) and: (2) the person intentionally commits the murder in the course of committing or attempting to commit kidnapping . . . ." TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon Supp. 2008).

In the instant case, the first paragraph of count 1 of the indictment alleged in pertinent part that:

---

[8] *See* TEX. PENAL CODE ANN. § 19.03(a) (Vernon Supp. 2008).

9

> GONZALO ARTEMIO LOPEZ . . . did then and there intentionally cause the death of an individual, namely, Jose Guadalupe Ramirez, by striking him with a pick, and the defendant was then and there in the course of committing and attempting to commit the offense of kidnapping of Jose Guadalupe Ramirez[.]

The second and third paragraphs of count 1 repeated the pertinent language of paragraph one above except the cause of death was alleged "by striking him with a pick axe" (paragraph two) and "by striking him with an object unknown to the Grand Jurors" (paragraph three). Thus, count 1 alleged the offense of capital murder in the course of committing or attempting to commit kidnapping.

With respect to the allegations of capital murder in the instant case, we note that it is unnecessary to allege the constituent elements of the aggravating feature that elevate the offense of murder to capital murder. *Alba v. State*, 905 S.W.2d 581, 585 (Tex. Crim. App. 1995); *Gribble v. State,* 808 S.W.2d 65, 73 (Tex. Crim. App. 1990); *Beathard v. State*, 767 S.W.2d 423, 431 (Tex. Crim. App. 1989). The phrase "in the course of committing or attempting to commit" as used in section 19.03(a)(2) is not defined in the penal code. *Riles v. State,* 595 S.W.2d 858, 862 (Tex. Crim. App. 1980). The phrase has been judicially defined to mean "conduct occurring in an attempt to commit, during the commission or in the immediate flight after the attempt or commission of the offense." *Id*; *McGee v. State*, 774 S.W.2d 229, 234 (Tex. Crim. App. 1989); *see also Barnes v. State,* 845 S.W.2d 364, 367 (Tex. App.–Houston [1st Dist.] 1992, no pet.). When the phrase is alleged in a capital-murder case, it does not necessarily require proof of a completed underlying offense or completed attempt. *McDuff*, 943 S.W.2d at 526; *see Flores,* 906 S.W.2d at 139.

*2. Aggravated Kidnapping*

A person who intentionally or knowingly abducts another person is guilty of kidnapping. TEX. PENAL CODE ANN. § 20.03(a) (Vernon 2003). The offense becomes

aggravated kidnapping if the offense is committed with the intent to: (1) hold the victim for ransom or reward; (2) use the victim as a shield or hostage; (3) facilitate the commission of a felony or the flight after the attempt or commission of a felony; (4) inflict bodily injury on, violate, or abuse the victim sexually; (5) terrorize the victim or a third person; or (6) interfere with the performance of any governmental or political function. *Id*. § 20.04(a)(1)-(6). Aggravated kidnapping is also committed if a "person intentionally or knowingly abducts another person and uses or exhibits a deadly weapon during the commission of the offense." *Id*. § 20.04(b). Aggravated kidnapping is a first-degree felony[9] unless the actor "voluntarily release[s] the victim in a safe place," in which event it is a second-degree felony. *Id*. § 20.04(d). Kidnapping is a separate and distinct crime under the penal code. *Gribble*, 808 S.W.2d at 71. Aggravated kidnapping is also a separate crime. *McDuff*, 943 S.W.2d at 926.

In the instant case, count 2, paragraph one of the indictment alleged in pertinent part that:

> GONZALO ARTEMIO LOPEZ . . . did then and there, with the intent to hold Jose Guadalupe Ramirez for ransom, intentionally and knowingly abduct Jose Guadalupe Ramirez by restricting the movements of said Jose Guadalupe Ramirez without his consent so as to interfere substantially with his liberty, by confining him, with the intent to prevent his liberation, by using and threatening to use deadly force, namely, a firearm[.]

The second paragraph of count 2 alleged Lopez prevented Ramirez's liberation "by secreting or holding him in a place where he was not likely to be found, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a firearm, during the commission of said offense[.]" Thus, count 2 alleged two forms of aggravated kidnapping

---

[9]*See* TEX. PENAL CODE ANN. § 20.04(c) (Vernon 2003).

under section 20.04(a)(1) and section 20.04(b). It utilized both definitions of "abduct"[10] and alleged the required intent to make the offense aggravated kidnapping.

*3. Analysis*

In applying the *Blockburger* test, we observe that the State was required to prove that Lopez intentionally or knowingly intended to cause Ramirez's death in order to convict under count I (capital murder). The capital-murder allegation required an intent to kill which was not required as an element of aggravated kidnapping. The aggravated kidnapping allegation (paragraph one) required the specific intent to hold Ramirez for ransom, and paragraph two required use or exhibition of a deadly weapon during the commission of the offense. Because each offense has a unique element, they are not the "same offense" under *Blockburger*. *McDuff*, 943 S.W.2d at 527; *see Scott v. State*, 861 S.W.2d 440, 446 (Tex. App.–Austin 1993, no pet.). Regardless of whether the *Blockburger* test has been met, the touchstone is legislative intent. *McDuff*, 943 S.W.2d at 527; *see Kopecky,* 821 S.W.2d at 959. The question is whether the legislature intended that an accused in Lopez's position be punished both for capital murder in the course of committing or attempting to commit kidnapping and for aggravated kidnapping. We hold that this was the legislature's intent.

Capital murder and aggravated kidnapping are separate and distinct offenses in different chapters of the penal code providing dissimilar penalties and protecting against different evils. *McDuff*, 943 S.W.2d at 527. Each statute has its own unique elements. *Id*. Different types of capital murder may be alleged under section 19.03 or even under section 19.03(a)(2) alone. TEX. PENAL CODE ANN. § 19.03 (Vernon Supp. 2008). Different types of aggravated kidnapping may be alleged depending on the specific intent involved.

---

[10] EX. PENAL CODE ANN. § 20.01(2)(A), (B) (Vernon Supp. 2009).

TEX. PENAL CODE ANN. § 20.04 (Vernon 2003). The language structure of the statutes reflects the legislative intent that multiple punishments be authorized for capital murder and aggravated kidnapping when the convictions are obtained in a single trial. *McDuff*, 943 S.W.2d at 527. We conclude that the legislature intended aggravated kidnapping to be a separate offense which is punishable in addition to any penalty imposed in a capital-murder case when the underlying or predicate offense may involve committing or attempting to commit kidnapping. *Id*. Accordingly, Lopez's fifth amendment right against multiple punishments for the same offense was not violated.

In the instant case, the sentences were made to run concurrently because they arose out of the same criminal episode and were tried in the same criminal action. *See* TEX. PENAL CODE ANN. § 3.03(a) (Vernon Supp. 2008). Concurrent sentences do not foreclose a finding of double jeopardy or require the finding. *McDuff*, 943 S.W.2d at 527, *see Ex parte Scelles,* 511 S.W.2d 300, 302 (Tex. Crim. App. 1974); *York v. State,* 848 S.W.2d 341, 342 (Tex. App.–Texarkana 1993, pet. ref'd) (citing *United States v. Osunegbu,* 822 F.2d 472, 481 (5th Cir.1987)). The third issue is overruled.

III. Conclusion

We affirm the trial court's judgments.

ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this 23rd day of October, 2008.