Aaron Keith NOLLEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–97–00439–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 21, 1999.

Douglas H. Petit, Houston, for appellants.

Kelly Ann Smith, Houston, for appellees.

Panel consists of Chief Justice MURPHY, Justices HUDSON and FROST.

## O P I N I O N

KEM THOMPSON FROST, Justice.

We withdraw our opinion of September 9, 1999, and substitute this opinion in its place. The State's motion for rehearing is overruled.

This is an appeal from a conviction for aggravated assault in which the appellant, Aaron Keith Nolley, asserts that accomplice testimony, uncorroborated by other evidence tending to connect him to the offense, was legally and factually insufficient to support his conviction. Indicted for capital murder, the appellant pleaded not guilty and elected to be tried before a jury. The jury declined to find him guilty of capital murder, but returned a guilty verdict on the lesser included offense of aggravated robbery. The trial court assessed punishment at confinement for life in the Texas Department of Criminal Justice, Institutional Division. We reverse and render a judgment of acquittal.

In the early morning hours of September 18, 1993, Royal Horatio Hemphill ("Royal") and his girlfriend, Antoinette Denise Washington ("Denise") lay asleep in the bedroom of the couple's north Houston duplex. Their friend, Glen Curtis Thomas ("Glen") lounged on a couch in their living room, watching television as his friends slept. Unalarmed by mumbling he heard outside the locked door of the duplex, Glen was wholly unprepared for the maelstrom that was about to erupt around him. Unbeknownst to him and his slumbering friends, a band of gun wielding thugs were preparing to break in and pillage the place they believed to be a "weed house."

Striking with terrifying surprise, four masked men, carrying firearms, suddenly kicked down the front door of the duplex. Three of the gunmen were armed with revolvers and the fourth wielded a shotgun. One of the four put his gun to Glen's head and ordered him not to move while the others headed for the bedroom. Denise, having heard the commotion in the living room, jumped out of bed and hid in the closet just in time to conceal herself from the masked intruders. Royal awoke just as the gunmen entered the bedroom. From her hiding place, Denise heard the room thunder with five rounds of gunshots. Several minutes after the shooting stopped and the gunmen retreated, she emerged to find Royal's lifeless body on the floor.

As the masked intruders were fleeing the scene, Glen, fearful that they would shoot him next, bolted out the front door, and attacked one of them, knocking him to the ground. Gunfire again erupted. A shotgun blast shattered Glen's arm. One of the masked intruders fell to the ground, accidentally shot by one of his compatriots. The masked men dragged their wounded companion from the scene, piled into a Cadillac, and sped off.

Denise, terrified from the ordeal, tried to summon help. Although wounded, Glen

ran to the neighbor's house to call the police. Upon arrival at the duplex, emergency medical personnel pronounced Royal dead and rushed Glen by ambulance to Ben Taub Hospital. Meanwhile, the masked intruders drove their wounded cohort to nearby LBJ Hospital, where he died from the gunshot wound.

Although both Glen and Denise were at the scene when Royal was killed, with every visage hidden from view, neither of them could identify the masked assailants. After an extensive investigation, the Houston police identified four men whom they believed had participated in the murderous rampage at Royal's house—Anthony Moore (known as "Little Red"), Chaux Stansbury, Aubrey Toatley, and the appellant. Anthony Moore had died of the gunshot wound he received while fleeing the scene. The police arrested and charged the other three with the capital murder of Royal Hemphill.

Shortly after the arrests, Toatley entered into a plea bargain with state prosecutors in which he pleaded guilty to aggravated robbery in exchange for his testimony against the appellant. At trial, Toatley identified the appellant as the shotgun-wielding intruder who had participated in the fatal shooting of Royal Hemphill and who had fired the shotgun blast that had put Glen Thomas in the hospital for months. Toatley also testified that the appellant had inadvertently fired the fatal shot that killed Anthony Moore. In addition to presenting Toatley as a witness for the prosecution, the state also offered the testimony of Glen and Denise, as well as the testimony of Mary Moore, Anthony Moore's mother, and extensive testimony concerning the crime scene and the subsequent investigation. Based on this evidence, the jury found the appellant guilty of the lesser included offense of aggravated robbery.

Although the appellant presents two points of error challenging his conviction,

we reach only his first point of error, in which he asserts that the state failed to meet its burden under Article 38.14 of the Texas Code of Criminal Procedure, which mandates the corroboration of accomplice testimony like that of Aubrey Toatley. We consider that assertion as a challenge to the sufficiency of the evidence to sustain the conviction. *See Cook v. State,* 858 S.W.2d 467, 469–70 (Tex.Crim.App.1993). Based on the record before this court, we are compelled to sustain the appellant's first point of error and reverse and render a judgment of acquittal.[1]

### TEXAS CODE OF CRIMINAL PROCEDURE, ARTICLE 38.14

Article 38.14 of the Texas Code of Criminal Procedure, sometimes referred to as the "accomplice witness rule," provides that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." Tex.Code Crim. Proc. Ann. art. 38.14 (Vernon 1979).

### *Underlying Rationale of the Accomplice Witness Rule*

The accomplice witness rule is not a product of either common law or federal constitutional law, but a creation of the Texas legislature. *See Blake v. State,* 971 S.W.2d 451, 454 (Tex.Crim.App.1998) (en banc). The purpose of the rule is to ensure that the jury does not consider accomplice witness evidence *unless* the jury finds both that the accomplice witness is telling the truth and that other evidence corroborates the accomplice witness' testimony. *See Tran v. State,* 870 S.W.2d 654, 658 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd). "The rule reflects a legislative determination that accomplice testimony implicating another person should be

---

1. Because we reverse and render on the first issue, we need not address the appellant's

second point of error that the trial court erred in cumulating his sentence.

viewed with a measure of caution, because accomplices often have incentives to lie, such as to avoid punishment or shift blame to another person." *Blake*, 971 S.W.2d at 454 (citations omitted). The accomplice's motives in testifying against the accused may well include malice or an attempt to curry favor from the state in the form of a lesser punishment, or perhaps, no punishment. The Texas legislature has determined that because the testimony of an accomplice is inherently untrustworthy and should be viewed with caution, uncorroborated testimony of an accomplice, standing alone, is not enough to support a criminal conviction.[2]

### Legal Standard for Evaluation of Corroborating Evidence

■ To determine whether an accomplice's testimony is corroborated, we eliminate the accomplice testimony and review the remaining evidence to determine whether it *tends* to connect the defendant to the offense. *See Knox v. State*, 934 S.W.2d 678, 686 (Tex.Crim.App.1996). In evaluating the sufficiency of the corroboration, we consider each case on its own facts and circumstances, and look to all facts as furnishing the corroboration. *See Munoz v. State*, 853 S.W.2d 558, 559 (Tex.Crim. App.1993). The corroborative evidence may be circumstantial or direct, and it need not establish the defendant's guilt of the charged offense nor directly link the accused to the offense; rather, it is sufficient if it "tends" to connect the defendant to the offense. *See Munoz*, 853 S.W.2d at 559; *Gosch v. State*, 829 S.W.2d 775, 777 (Tex.Crim.App.1991). If, however, the corroborating evidence does no more than point the finger of suspicion towards the accused, it is insufficient to satisfy the requirements of article 38.14, Texas Code of Criminal Procedure. *See Paulus v. State*, 633 S.W.2d 827, 843 (Tex.Crim.App.

1981). Even though an accomplice witness may state any number of facts that are corroborated by other evidence, if the corroborated facts do not *tend* to connect the accused with the crime, article 38.14 is not satisfied. *See id.* Thus, if the corroborating evidence fails to connect the accused to the offense, the evidence is insufficient to support the conviction. *See Munoz*, 853 S.W.2d at 560.

### Evaluation of Non–Accomplice Evidence

■ There is no doubt that Aubrey Toatley is an accomplice witness. The state indicted him for the same offense as the appellant, which makes him an accomplice as a matter of law. *See Kunkle v. State*, 771 S.W.2d 435, 439 (Tex.Crim.App. 1986). Therefore, we must apply the standard discussed above to determine whether there is evidence other than the testimony of Toatley which "tends" to connect the appellant to the offense. At trial, the state presented two witnesses to corroborate Toatley's testimony: (1) Mary Moore, the mother of Anthony Moore, the accomplice who was inadvertently shot and killed during the robbery; and (2) G.J. Novack, an investigator in the Houston Police Department's homicide division, who was assigned to investigate the murder of Royal Hemphill.

Mary Moore testified that the last time that she saw her son (Anthony Moore) alive was on the evening of September 17, 1993, when she saw him in the same car, a Cadillac, as Chaux Stansbury and another friend of her son's known to her as "Aaron" (the first name of the appellant). Ms. Moore testified that her son and his friends left her house around 9:00 p.m. or 10:00 p.m. that evening—at least three and a half hours before the robbery and murder.[3] Ms. Moore, however, could not un-

---

**2.** The corroboration requirement applies only when the accomplice witness is called by the state. *Blake*, 971 S.W.2d at 454.

**3.** Although the record is not clear as to the precise time that the robbery and murder occurred, Denise testified that she went to bed about 1:30 a.m. and that the intruders broke in shortly thereafter.

equivocally identify the appellant as her son's friend "Aaron." She stated only that the appellant looked like Aaron "grown up and dressed up." Ms. Moore offered no further corroborating testimony.

Officer G.J. Novack testified that on September 19, 1993, the day after the offense, he received a phone call from Chaux Stansbury, who told him that he had been present when Anthony Moore was fatally shot. Stansbury agreed to meet with Officer Novack at Stansbury's mother's house. When Officer Novack arrived at the house, he saw Stansbury walking down the street with the appellant. Officer Novack testified that both the appellant and Stansbury volunteered to go to the police station and give statements to the police. When Stansbury implicated the appellant in the events of the previous morning, the state filed charges against both Stansbury and the appellant.

Viewing the testimony of Ms. Moore and Officer Novack in the light most favorable to the verdict, the state established that (1) the appellant was in a car with Anthony Moore and Chaux Stansbury and that the car left Moore's house at least three and a half hours before the robbery and murder of Royal Hemphill, and (2) the appellant was with Chaux Stansbury, walking down a street a day and a half after the robbery and murder. The state offered no other corroborating evidence at trial.

 The only piece of corroborating testimony that comes close to "tending" to connect the appellant with the offense is Ms. Moore's testimony that she saw the appellant in the same car as her son and Stansbury the evening before the robbery and murder. Although non-accomplice evidence that the accused was in the company of the accomplice at or near the time or place of the offense is proper corroborating evidence, such evidence alone is not conclusive corroboration. *See Hernandez v. State,* 939 S.W.2d 173, 178 (Tex.Crim. App.1997); *Cox v. State,* 830 S.W.2d 609, 612 (Tex.Crim.App.1992); *Jackson v. State,* 745 S.W.2d 4, 13 (Tex.Crim.App.

1988). There must be *some* evidence which, when coupled with evidence which places the accused in the company of the accomplice at the time of the offense, tends to connect the accused to the commission of the crime. *See Cox,* 830 S.W.2d at 611–612; *Jackson,* 745 S.W.2d at 13. This additional evidence need not be sufficient in and of itself to establish the accused's guilt, nor is it necessary for the non-accomplice evidence to directly link the accused to the commission of the offense. *See Cox,* 830 S.W.2d at 611. In *Jackson,* in addition to evidence that the defendant was with the accomplice shortly before the crime, the state also introduced the following evidence to connect the defendant to the crime: (1) the defendant was driving the deceased's car the day after the murder, (2) the defendant had the deceased's ATM card in his possession, (3) the defendant had rented the murder weapon shortly before the murder, (4) the defendant's fingerprints and pubic hair were found on the victim and in the victim's car, and finally (5) the defendant was found in possession of a watch similar to one owned by the victim. *See Jackson,* 745 S.W.2d at 13. In *Hernandez,* the state connected the defendant to the offense by offering evidence that (1) a few months before the murder the defendant had been in possession of a gun similar to that used in the murder (a twelve gauge shotgun), and that (2) the defendant fled the area without explanation after the offense. *See Hernandez,* 939 S.W.2d at 178. In both of these cases, the court found that the defendant's presence with the accomplice at or near the time of the offense, along with the additional evidence "tending" to connect the defendant to the crime, was sufficient to satisfy article 38.14. In the present case, however, no such additional evidence exists.

The testimony of Ms. Moore places the appellant in the company of the accomplices within three and a half hours of the robbery and murder, and this testimony may be considered as corroborating evidence; *but without more,* this testimony

alone is insufficient to satisfy the statute. The only other evidence the state points to as corroborating Toatley's testimony is the fact that Officer Novack saw the appellant with another accomplice (Chaux Stansbury) approximately thirty-six hours *after* the crime—a fact which does not in any way tend to connect the appellant with the crime. Under these circumstances, we cannot say that the accomplice testimony of Toatley is supported by corroboration sufficient to satisfy the requirements of article 38.14. Quite simply, there is no evidence of any kind that may be coupled with Ms. Moore's testimony (which is itself a shaky identification of the appellant as one of the occupants of the Cadillac on the night in question) that tends to connect the appellant with the offense. Given the total lack of corroborating evidence, we find that the state failed to meet its burden.

### CONCLUSION

Royal Hemphill died a brutal death at the hands of armed bandits who had no regard for the sanctity of human life or the ownership of property. The callous, wanton and ruthless conduct of the perpetrators is utterly abhorrent to a free society whose principles are founded on the inviolability of human life and the scrupulous protection of personal property rights. This same society guards the personal freedoms of those accused of such crimes to ensure that the evidence against them is sufficient under the standards set by law to convict them of the crimes charged. Our state legislature long ago determined that accomplice testimony is inherently untrustworthy and enacted article 38.14 of the Texas Code of Criminal Procedure to ensure that courts view such evidence with caution. Where, as here, the entire case against the accused is based solely on the testimony of an accomplice, the statute inexorably demands corroborating evidence that tends to connect the accused to the crime in order to sustain a conviction. There is none in this case. Therefore, the law mandates that we find the evidence insufficient to satisfy the requirements of the accomplice witness rule, reverse the judgment of conviction, and order the appellant acquitted of all charges.

The judgment of conviction is reversed and the appellant is ordered acquitted.