NUMBER 13-03-420-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


RALPH MCAFEE, SR., Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 23rd District Court of Wharton County, Texas.


 


DISSENTING OPINION



Before the Court En Banc 


Dissenting Opinion by Justice Yañez



 The majority affirms appellant's conviction because it concludes there is
independent evidence requiring no corroboration that "tends to connect" appellant to the
offense. Specifically, the majority identifies (1) Officer Ross Gonzales's testimony that he
observed appellant and his accomplice, Frank Gonzales (Franky) arrive at Jesse Waddy's
(the confidential informant's) residence in accordance with a proposed drug transaction
pre-arranged by Waddy and police officers, and (2) appellant was apprehended
immediately thereafter "in close proximity" to the drugs. I would hold that neither
constitutes evidence "tending to connect" appellant with the offense and would order
appellant acquitted of all charges. Accordingly, I respectfully dissent. 

I. Background


 On September 24, 2002, a confidential informant, Waddy, called Grady Smith, a
City of Wharton police officer, with information regarding an impending drug transaction. 
Officer Smith, who was out of town when he received the call, referred Waddy to Detective
Ross Gonzales. Gonzales learned that appellant was to bring some crack cocaine to
Waddy's house. Gonzales testified that he had "not even ten minutes" to make the
arrangements. Gonzales testified that he and Waddy agreed that if Waddy saw that
appellant had drugs in the car, he was to signal the police by taking off his hat when
appellant left. Gonzales testified that he and another officer, Detective Lynch, set up
surveillance on Waddy's residence. He also testified that he alerted patrol officers and
arranged for them to try and make a traffic stop of appellant's vehicle. According to
Gonzales, the police did not want to arrest appellant at Waddy's residence because they
wanted to protect Waddy's identity as a confidential informant. Gonzales testified that he
saw appellant arrive at Waddy's house and speak to Waddy outside in the yard. Gonzales
testified that a passenger in appellant's vehicle, Franky (also known as "Chauchi"), stayed
in the vehicle. Gonzales recognized Franky as someone who had been arrested on
several occasions for public intoxication. Officers Gonzales and Lynch saw Waddy give
the agreed-upon signal after appellant's vehicle left the house. 

 Officer Lupe Hernandez testified that he "paced" appellant's vehicle with his patrol
car and stopped appellant for traveling at forty miles per hour in a thirty-mile-per-hour zone. 
Officer Hernandez activated his vehicle's lights and appellant pulled over. After appellant
produced an expired insurance card, Officer Hernandez arrested him. Officer Hernandez
performed a pat-down search of appellant and an inventory search of the vehicle because
it was going to be towed. (1) Several other officers arrived at the scene, including Officer
Walter Jameson. Officer Hernandez testified that Franky was shaking, sweating, and
extremely nervous. Officer Jameson performed a pat-down search on Franky and found
cocaine in the cuff of his sweat pants. Appellant and Franky were both charged with
possession of cocaine. (2) 

 Appellant did not testify at trial and the defense offered no witnesses. The State
presented testimony by Officers Smith and Gonzales, Officers Jameson and Hernandez
(both involved in the traffic stop and arrest), Waddy, and Franky. At the close of the
State's case, appellant's counsel requested an instructed verdict on grounds that the State
had failed to provide evidence corroborating either Franky's testimony, as an accomplice
witness, or Waddy's testimony, as a confidential informant. Counsel argued that neither
witness's testimony could corroborate the other because "you can't take unreliable
information and corroborate it with other unreliable information." The State argued that as
a confidential informant, Waddy's testimony "does not need to be corroborated." The trial
court overruled appellant's motion for instructed verdict. The jury found appellant guilty. (3) 
This appeal ensued. 

II. Standard of Review and Applicable Law 


 In his first issue, appellant contends the evidence is insufficient to corroborate
Franky's testimony as an accomplice witness as required by the accomplice witness rule. (4) 
In his second issue, appellant contends the evidence is insufficient to corroborate Waddy's
testimony as a confidential informant as required by the confidential informant statute. (5) 

A. Accomplice Witness Rule


 Appellant argues that Franky's accomplice witness testimony must be corroborated
by "other evidence" and cannot be corroborated by the testimony of a confidential
informant. The State argues that "no prohibition exists against an accomplice
corroborating an informant or vice versa." The State contends that Franky's accomplice
witness testimony is independently corroborated by Waddy's confidential informant
testimony. Moreover, the State contends that even without Waddy's testimony, there was
sufficient non-accomplice testimony tending to connect appellant to the crime because (1)
appellant was present at the time and place of the offense, (2) the cocaine was found on
a passenger in a car that appellant owned and was driving, and (3) appellant was in close
proximity to the passenger at the time of the commission of the offense. 

 The accomplice-witness rule provides:

A conviction cannot be had upon the testimony of an accomplice unless
corroborated by other evidence tending to connect the defendant with the
offense committed; and the corroboration is not sufficient if it merely shows
the commission of the offense. (6)

 

 In conducting a sufficiency review under the accomplice-witness rule, a reviewing
court must eliminate the accomplice testimony from consideration and then examine the
remaining portions of the record to see if there is any evidence that tends to connect the
accused with the commission of the crime. (7) "Tendency to connect" rather than rational
sufficiency is the standard: the corroborating evidence need not be sufficient by itself to
establish guilt. (8) "The accomplice witness rule is satisfied if there is some non-accomplice
evidence which tends to connect the accused to the commission of the offense alleged in
the indictment." (9) No precise rule can be formulated regarding the amount of evidence that
is required to corroborate the testimony of an accomplice witness; each case must be
judged on its own facts. (10) The "tends-to-connect" standard does not present a high
threshold. (11) Even insignificant circumstances may satisfy the test. (12) If, however, the
corroborating evidence does no more than point the finger of suspicion towards the
accused, it is insufficient to satisfy the requirements of article 38.14. (13) One accomplice
witness's testimony may not corroborate the testimony of another accomplice witness. (14) 
While the accused's mere presence at the scene of the crime is insufficient, by itself, to
corroborate accomplice witness testimony, "evidence of such presence, coupled with other
suspicious circumstances, may tend to connect the accused to the offense." (15) The
accomplice-witness rule is not based upon federal or state constitutional notions of
sufficiency; there simply needs to be "other" evidence tending to connect the defendant to
the offense. (16)

 The State's failure to sufficiently corroborate accomplice testimony in accordance
with the statute results in the remedy of acquittal. (17) This result is not required by the
federal constitution, but by state statute: "In all cases where, by law, two witnesses, or one
with corroborating circumstances, are required to authorize a conviction, if the requirement
be not fulfilled, the court shall instruct the jury to render a verdict of acquittal, and they are
bound by the instruction." (18)

B. Confidential Informant Statute


 Similarly, the legislature has decided that a defendant may not be convicted by the
statements of a confidential informant unless that testimony is corroborated: 

(a) A defendant may not be convicted of an offense under Chapter 481,
Health and Safety Code, on the testimony of a person who is not a licensed
peace officer or a special investigator but who is acting covertly on behalf of
a law enforcement agency or under the color of law enforcement unless the
testimony is corroborated by other evidence tending to connect the
defendant with the offense committed.

 

(b) Corroboration is not sufficient for the purposes of this article if the
corroboration only shows the commission of the offense. (19)


 Several courts, including this Court, have concluded that by enacting substantially
the same language in article 38.141 as in article 38.14, the legislature intended the same
standard for corroboration to apply to accomplice witnesses and confidential informants. (20) 
Courts have acknowledged that the purpose of the corroboration requirement in article
38.14 is to ensure that a conviction rests upon more than just the testimony of an
accomplice because an accomplice may have a selfish incentive to be untruthful, such as
to avoid or lessen punishment or to shift the blame to another person. (21) Similarly, courts
have recognized that confidential informants often work with police for self-interested
reasons and "generally have an incentive or hope for personal gain," such as monetary
compensation or dismissal of pending charges. (22) Accordingly, courts have applied the
same corroboration standard to article 38.141. (23)

III. Analysis


 Appellant asserts that the issue of whether an informant's testimony under article
38.141 can corroborate an accomplice witness's testimony under article 38.14 is "an issue
of first impression." However, since appellant's brief was filed, this Court has addressed
this question. (24) In Patterson, this Court found that "the code of criminal procedure places
no restrictions on the use of informant testimony to corroborate accomplice testimony or
vice versa." (25) Based on the absence of an express statutory prohibition against the use
of informant testimony to corroborate accomplice testimony and vice versa, this Court
concluded that "an accomplice may corroborate the testimony of an informant and an
informant may corroborate the testimony of an accomplice." (26) 

 On May 6, 2006, this Court granted appellant Patterson's motion for rehearing en
banc to reconsider the issue of whether an informant's testimony can be used to
corroborate accomplice testimony and vice versa. (27) Accordingly, I turn to reconsideration
of the issue. 

 In Blake v. State, the court of criminal appeals explained the purpose of the
accomplice witness rule:

 The heart of the accomplice witness rule is the legislature's inherent
suspicion and belief in the untrustworthiness of the accomplice's testimony.


The rule's roots can be traced to common law, where interested parties were
precluded from testifying in both criminal and civil cases- "fear of perjury was
the reason for this rule." The United States Supreme Court recognized that
the basis of such rules was to set aside a class of persons who were more
likely to commit perjury than other witnesses.


This suspicion and fear of perjury is not without reason. Accomplices often
strike bargains with the state, where the prosecutor agrees to a favorable
sentencing recommendation in exchange for the accomplice's testimony
against another person. Courts have recognized that a plea bargain
contains a degree of compulsion. In addition, those accused of crimes tend
to try to place the responsibility for the commission of the crime on the other
participants while downplaying their own participation, often in order to avoid
the consequences of criminal acts. For these reasons, and to protect the
criminal defendant in each case, the legislature has determined that
uncorroborated testimony of an accomplice is not enough to support a
criminal conviction. (28)


 Article 31.141 was enacted by the Texas Legislature and became effective
September 1, 2001. (29) "Similar to the concerns raised by accomplice witness testimony,
covert witnesses may have incentives to lie or shade their testimony in favor of the state,
which requires such testimony to be viewed with a measure of caution." (30) "In interpreting
the meaning of article 38.141, we must assume that the legislature was aware of case law
interpreting the similar language used in article 38.14." (31) 

 In determining whether there is "other evidence" tending to connect an accused with
the offense under article 38.14, I agree with appellant that the "other evidence" used to 
corroborate accomplice witness testimony cannot include uncorroborated confidential
informant testimony. I conclude that uncorroborated confidential informant testimony is not
"evidence" (unless independently corroborated), and thus, cannot constitute "other
evidence" under the accomplice witness statute. Similarly, I conclude that uncorroborated
accomplice witness testimony is not "evidence" (unless independently corroborated), and
thus, cannot constitute "other evidence" under the confidential informant statute. 

 Moreover, I conclude that the rules governing statutory construction support my
conclusion. In construing a statute, we look first to the literal language, for that is the best
indicator of the legislative intent. (32) "If that language is clear and unambiguous, the plain
meaning of those words is applied." (33) "But if the plain language leads to absurd results that
the Legislature could not possibly have intended, or if the language is ambiguous, we may
consider extra-textual factors to determine the statute's meaning." (34)

 Here, the plain language of each statute requires corroboration by "other evidence
tending to connect the defendant with the offense committed." (35) As noted above, I must
assume that, in enacting article 38.141, "the legislature was aware of case law interpreting
the similar language used in article 38.14." (36) Although the statute does not define "other
evidence" or otherwise qualify the term, I conclude that the legislature could not have
intended it to include inherently suspect evidence that "should be viewed with a measure
of caution." (37) 

 I address appellant's first issue by eliminating the accomplice witness testimony of
Franky to determine "whether the other inculpatory facts and circumstances in evidence
tend to connect appellant to the offense." (38) If the "other evidence" is insufficient to tend to
connect appellant to the offense, I next address appellant's second issue by eliminating
the confidential informant (Waddy's) testimony to determine "whether the other inculpatory
facts and circumstances in evidence tend to connect appellant to the offense." (39) If, under
both analyses, the "other evidence tending to connect" appellant to the offense is
insufficient, I must order the appellant acquitted. (40) 

 I first eliminate Franky's testimony and examine the other witnesses' testimony for
evidence that tends to connect appellant to the offense. (41) Officer Gonzales testified that
(1) he saw appellant arrive at Waddy's house and speak to him in the yard (which
corroborates Waddy's testimony that appellant came to his house to sell him crack
cocaine); (2) he saw Franky was a passenger in appellant's vehicle, but stayed in the car
during appellant's conversation with Waddy (which corroborates Waddy's testimony that
Franky was present but stayed in the car); and (3) when appellant left, he saw Waddy give
the agreed-upon signal that meant appellant had drugs in the car (which corroborates
Waddy's testimony that he gave the pre-arranged signal to the police that appellant had
drugs in his possession). Gonzales testified that the only time he uses a "wire" on an
informant is during an investigation of a delivery case. He did not have a "wire" on Waddy
in this case because it was a possession case. Gonzales testified that the first time he saw
the drugs in this case was after appellant and Franky had been arrested. Eliminating
Franky's testimony, the only testimony that appellant had crack cocaine in his possession
is Waddy's testimony that he did. Thus, eliminating Franky's testimony, Waddy's testimony
that appellant had possession of the cocaine is not corroborated. After eliminating
Franky's testimony from consideration, I find that the corroborating evidence fails to
connect appellant to the offense. I would sustain appellant's first issue.

 I next eliminate from consideration Waddy's testimony and examine the other
witnesses' testimony for evidence that tends to connect appellant to the offense. Officer 
Jameson testified that (1) at the traffic stop, Franky was "really nervous" and "shaking
uncontrollably," (which corroborates Franky's testimony that he was shaking because he
was scared and nervous); (2) because Franky was "sweating profusely" and "generally
acting like there was something wrong," Jameson pat-searched him a second time and
found cocaine in the cuff of his sweat pants (which corroborates Franky's testimony that 
he was scared because when the police vehicle activated its lights, he had put what he
knew was crack cocaine in the crotch area of his pants). Significantly, Franky's testimony
that when the police vehicle activated its lights, appellant handed him the cocaine and told
him to put it in his pants, was not corroborated by any evidence other than Waddy's
uncorroborated testimony that appellant had drugs in his possession when he left Waddy's
residence. 

 The State also argues that even if Waddy's testimony is eliminated from
consideration, there was sufficient non-accomplice evidence tending to connect appellant
to the crime because (1) appellant was present at the time and place of the offense, (2) the
cocaine was found on a passenger in a car that appellant owned and was driving, and (3)
appellant was in close proximity to the passenger at the time of the commission of the
offense. I disagree. 

 It is well-settled that the mere presence of the accused in the company of an
accomplice during the commission of a crime is not, by itself, sufficient to corroborate
accomplice testimony. (42) In Rios, the San Antonio Court of Appeals held the State
presented insufficient evidence "tending to connect" the crime to a passenger present in
a car which contained marihuana. (43) Rios stands for the proposition that, absent any other
"suspicious circumstances," mere presence at the scene is insufficient to corroborate
accomplice witness testimony. (44) Texas courts have held that "suspicious circumstances"
can include nervous and furtive behavior. (45) For example, in Hill v. State, the police
followed a vehicle based on an informant's tip and pulled it over. (46) Upon questioning, the
front-seat passenger produced cocaine, which she had been hiding in her underwear. (47) 
The front-seat passenger told the police that the cocaine belonged to the appellant (back-seat passenger), who had given it to her and asked her to hide it when the police began
to follow their vehicle. (48) Both were arrested. (49) Eliminating the front-seat passenger's
accomplice witness testimony, the court found that appellant's presence, plus the officers'
observation of suspicious behavior inside the vehicle, provided sufficient corroboration of
the accomplice witness's testimony. (50) The officers testified that they saw appellant engage
in furtive gestures as they followed the suspect vehicle. (51) One officer testified that he saw
appellant move sideways and lean over the front seat toward the side of the car where the
front-seat passenger was sitting. (52) The other officer testified that there was a lot of
movement in the vehicle, "primarily from the back to the front," and that the appellant's
movements were consistent with someone trying to hide or dispose of something. (53)

 Here, the officers did not testify that they observed any movement or furtive
gestures inside the car consistent with Franky's testimony that appellant handed him the
cocaine. The officers did not testify that appellant was nervous. Other than appellant's
presence at the scene, there were no other "suspicious circumstances" tending to connect
appellant to the offense. 

 Eliminating Waddy's testimony, Franky's testimony that appellant gave him the
cocaine is not corroborated. After eliminating Waddy's testimony from consideration, I find
that the corroborating evidence fails to connect appellant to the offense. I would sustain
appellant's second issue.

 Response to Majority


 The majority concludes there is independent evidence requiring no corroboration
that "tends to connect" appellant to the offense. Specifically, the majority identifies (1)
Officer Gonzales's testimony that he observed appellant and his accomplice (Franky) arrive
at Waddy's (confidential informant's) residence in accordance with a proposed drug
transaction pre-arranged by Waddy and police officers, and (2) appellant was apprehended
immediately thereafter "in close proximity" to the drugs. I am unpersuaded that either
constitutes evidence "tending to connect" appellant with the offense for the following
reasons.

 With regard to the "narcotics investigation" involving appellant, Gonzales testified:

[Gonzales]: Okay. During the course of this narcotics investigation, me and
Waddy spoke and the deal was whenever McAfee got to his house, if he
[Waddy] saw the dope in the car, he was going to take his hat off as a signal
when he [McAfee] drove off.


As to the particulars of the "narcotics investigation," Gonzales testified:


[Appellant's counsel]: . . . When you did the-- how much notice did you have
ahead of time that the Defendant was going to be at Jesse Waddy's house?


[Gonzales]: Not very long at all.


[Counsel]: Approximately how long?


[Gonzales]: I believe Detective Smith called me. It was just spur of the
moment, and I probably maybe had not even ten minutes to gather
everybody up and get everything ready.


[Counsel]: Is that about ten minutes from the time the Defendant advised
you- excuse me- Jesse Waddy was at his residence and the Defendant was
on his way?


[Gonzales]: Right. 


Waddy testified that he contacted Officer Smith and was referred to Detective Gonzales.


Waddy also testified that he called appellant around 9:00 a.m. and told appellant he
wanted to purchase two ounces of cocaine. According to Waddy, when appellant did not
come, he called back and appellant was not home. At that point, Waddy left a message
for appellant. According to Waddy, the arrangements for appellant to come to Waddy's
house were made during a third phone call. Although Waddy's testimony does not reflect
how much time transpired between the first phone call at 9:00 a.m. and appellant's visit to
the house, Officer Jameson testified that he began his shift at 2:15 p.m. and was advised
of the proposed transaction by Gonzales. Significantly, all of the information- the
proposed drug transaction, the set-up, the hat signal indicating the presence of drugs-
came from Waddy. Officer Gonzales was contacted at the last moment and was invited
to observe the "transaction" that had been arranged by Waddy. On voir dire, Waddy
testified that he licked and smelled the substance appellant brought to the house to
determine it was cocaine. Although Gonzales testified he was able to watch the
conversation between Waddy and appellant, he did not testify that he observed Waddy
licking or smelling any substance. Gonzales testified that he did not see any cocaine until
after appellant was arrested. Gonzales's testimony shows only that he observed appellant
and Franky conversing in Waddy's yard. Waddy (and only Waddy) is the source of all
inferences that the events Gonzales observed represented a drug transaction. 
Accordingly, I conclude that Gonzales's "independent testimony" is shaped entirely by the
information that came from Waddy (the confidential informant) and is therefore, not
completely "independent." 

 The majority also concludes that appellant's apprehension "in close proximity" to the
drugs at issue constitutes evidence tending to connect appellant to the offense. It is
undisputed, however, that the drugs were not found within appellant's reach or anywhere
else in the vehicle. Instead, they were found in the cuff of Franky's (the accomplice
witness's) sweat pants. The majority concludes the evidence "tending to connect"
appellant to the offense is sufficient and should not be characterized as showing
appellant's "mere presence" because "mere presence" "denotes an element of innocent
coincidence that is entirely lacking in this case." We are not free, however, to speculate
as to whether there is an "element of innocent coincidence" in this case. The court of
criminal appeals has determined that mere presence of the accused is insufficient to
corroborate accomplice witness testimony; in order to "tend to connect" the accused to the
offense, such presence must be coupled with "suspicious circumstances." (54) Here, I
conclude that because the drugs were found in Franky's pants, not in a common area of
the vehicle readily accessible to appellant, such evidence cannot constitute the "suspicious
circumstances" required for purposes of corroboration. 

Response to Justice Castillo's Concurring Opinion 


 In his brief, appellant challenged the sufficiency of the evidence to corroborate the
testimony of the accomplice witness, Franky (issue one) and the sufficiency of the
evidence to corroborate the testimony of the confidential informant, Waddy (issue two). 
Justice Castillo's opinion takes no position on whether accomplice witness testimony can
corroborate confidential informant testimony and vice versa, but concludes that the
evidence is sufficient to support appellant's conviction as a party to the offense, based on 
circumstances which affirmatively link him to the drugs. Justice Castillo concludes that
"non-accomplice and non-confidential-informant testimony provide the affirmative links
sufficient to sustain the conviction on a party theory of culpability." The evidence Justice
Castillo points to is the testimony of the law enforcement officers regarding the narcotics
investigation and subsequent stop of appellant's vehicle. Justice Castillo states that
appellant was a "target" and that "[l]aw enforcement set up a procedure whereby a covert
agent would meet with McAfee at a predetermined location for the sole purpose of, and
ostensibly to transact, a cocaine buy." However, as noted above, appellant was not a
"target" of any investigation until Waddy called Officer Smith and law enforcement officers
did not "set up" the transaction; instead, Waddy set up the meeting with appellant and
called law enforcement officers to observe the transaction on extremely short notice. For
the reasons outlined above, I conclude that the officers' testimony regarding the
transaction is insufficient to affirmatively link appellant to the drugs. 

Conclusion


 I would hold that the evidence is insufficient to satisfy the requirements of either the
accomplice witness rule or the confidential informant rule. (55) Accordingly, I would reverse
the judgment of conviction and render a judgment of acquittal. (56) 

 

 

 LINDA REYNA YAÑEZ,

 Justice




Publish. Tex. R. App. P. 47.2(b).


Dissenting opinion delivered and filed 

this the 26th day of October, 2006.

1. Officer Hernandez testified that he could not release the vehicle to Franky, the passenger, because
he did not have a driver's license. 
2. It is undisputed that Franky is an accomplice. See Badillo v. State, 963 S.W.2d 854, 857 (Tex.
App.-San Antonio 1998, pet. ref'd) ("If a witness has been indicted for the crime, he or she is an accomplice
as a matter of law."). 
3. The court's charge stated, in pertinent part:


 The witness, Frank Gonzales, is an accomplice, if an offense was committed, and
you cannot convict the defendant upon his testimony unless you first believe that his
testimony is true and shows that the defendant is guilty as charged and even then you
cannot convict unless the accomplice's testimony is corroborated by other evidence tending
to connect the defendant with the offense charged. The witness, Jesse Waddy[,] is a
person who is not a licensed peace officer or investigator but was acting covertly on behalf
of a law enforcement agency. You cannot convict the defendant upon said testimony unless
you further believe that there is other testimony in the case, outside of the evidence of Frank
Gonzales and Jesse Waddy[,] tending to connect the defendant with its commission, the
corroboration is not sufficient if it merely shows the commission of the offense, but it must
also tend to connect the defendant with its commission and then from all of the evidence
you must believe beyond a reasonable doubt that the defendant is guilty of the offense
charged against him. (Emphasis added).
4. See Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005). 
5. See Tex. Code Crim. Proc. Ann. art. 38.141(a), (b) (Vernon 2005). 
6. Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005); Solomon v. State, 49 S.W.3d 356, 361 (Tex.
Crim. App. 2001). 
7. Solomon, 49 S.W.3d at 361. 
8. Id. (citing Cathey v. State, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999)).
9. Trevino v. State, 991 S.W.2d 849, 851 (Tex. Crim. App. 1999) (quoting Hernandez v. State, 939
S.W.2d 173, 176 (Tex. Crim. App. 1997) (emphasis in original)). 
10. Gill v. State, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994).
11. See Cantelon v. State, 85 S.W.3d 457, 461 (Tex. App.-Austin 2002, no pet.)
.
12. See id. 
13. Nolley v. State, 5 S.W.3d 850, 853 (Tex. App.-Houston [14th Dist.] 1999, no pet.). 
14. Badillo, 963 S.W.2d at 857. 
15. Trevino, 991 S.W.2d at 851-52 (quoting Dowthitt v. State, 931 S.W.2d 244, 249 (Tex. Crim. App.
1996)). 
16. Solomon, 49 S.W.3d at 361 (citing Cathey, 992 S.W.2d at 462-63). 
17. Cathey, 992 S.W.2d at 463 n.2.
18. Id. (quoting Tex. Code Crim. Proc. Ann. art. 38.17 (Vernon 2005) (emphasis in Cathey)).
19. Tex. Code Crim. Proc. Ann. art. 38.141(a), (b) (Vernon 2005). 
20. See, e.g.
, Brown v.State, 159 S.W.3d 703, 707 (Tex. App.-Texarkana 2004, pet. ref'd); Torres v.
State, 137 S.W.3d 191, 196 (Tex. App.-Houston [1st Dist.] 2004, no pet.); Jefferson v. State, 99 S.W.3d 790,
793 (Tex. App.-Eastland 2003, pet. ref'd ); Campos v. State, No. 13-02-359-CR, 2003 Tex. App. LEXIS
10614, *5 (Tex. App.-Corpus Christi Dec. 18, 2003, pet. ref'd) (not designated for publication); Cantelon, 85
S.W.3d at 460; Young v. State, 95 S.W.3d 448, 450-51 (Tex. App.-Houston [1st Dist.] 2002, pet. ref'd) ("In
interpreting the meaning of article 38.141, we must assume that the legislature was aware of case law
interpreting the similar language used in article 38.14."). 
21. Blake v. State, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998); Young, 95 S.W.3d at 451; Cantelon,
85 S.W.3d at 460.
22. Cantelon, 85 S.W.3d at 460; see Young, 95 S.W.3d at 451 (stating that "confidential informants
may have incentives to create criminal cases or shade their testimony in favor of the State in the hope that
they will be rewarded with greater leniency later on."). 
23. See Brown, 159 S.W.3d at 707; Torres, 137 S.W.3d at 196; Jefferson, 99 S.W.3d at 793; Campos, 
2003 Tex. App. LEXIS 10614, at *5; Young, 95 S.W.3d at 451; Cantelon, 85 S.W.3d at 460. 
24. Patterson v. State, Nos. 13-04-482-CR, 13-04-483-CR, 13-04-484-CR, 2005 Tex. App. LEXIS 8253
at *16 (Tex. App.-Corpus Christi Oct. 6, 2005, no pet. h.), reh'g en banc granted. 
25. See id. 
26. See id. 
27. On May 31, 2006, Patterson v. State and the present cause were resubmitted to this Court en banc. 
Upon reconsideration, a majority of this en banc Court has issued its opinion in Patterson this same date. See
Patterson v. State, Nos. 13-04-482-CR, 13-04-483-CR, 13-04-484-CR (Tex. App.-Corpus Christi Oct. 26,
2006, no pet. h.). 
28. Blake, 971 S.W.2d at 460; see Reyna v. State, 22 S.W.3d 655, 658 (Tex. App.-Austin 2000, no
pet.) (accomplice witness rule is intended to minimize the danger that an accomplice's self-interest might
motivate him to falsely implicate others in order to deflect blame and punishment from himself); Howard v.
State, 972 S.W.2d 121, 125 (Tex. App.-Austin 1998, no pet.) (accomplice witness rule requires the jury to
receive and act upon accomplice witness testimony with caution, considering the selfish interests and possibly
corrupt motives of the witness); McDuff v. State, 943 S.W.2d 517, 520 (Tex. App.-Austin 1997, pet. ref'd)
(noting "an accomplice witness is a discredited witness whose testimony should be received, viewed, and
acted upon with caution because of any interest the witness may have and because it is considered evidence
from a corrupt source."); Tran v. State, 870 S.W.2d 654, 658 (Tex. App.-Houston [1st Dist.] 1994, pet. ref'd)
(purpose of accomplice evidence rule is to assure that a jury does not consider accomplice evidence unless
the jury finds both that the accomplice is telling the truth and that other evidence corroborates the accomplice). 
29. See Acts 2001, 77th Leg., ch. 1102, § 1. 
30. Brown, 159 S.W.3d at 707 (citing Young, 95 S.W.3d at 451). 
31. Young, 95 S.W.3d at 451 (citing Acker v. Texas Water Comm'n, 790 S.W.2d 299, 301 (Tex. 1990)
("[a] statute is presumed to have been enacted by the legislature with complete knowledge of the existing law
and with reference to it.")).
32. Getts v. State, 155 S.W.3d 153,155 (Tex. Crim. App. 2005) (citing Boykin v. State, 818 S.W.2d
782 (Tex. Crim. App. 1991)). 
33. Id. 
34. Id. 
35. See Tex. Code Crim. Proc. Ann. arts. 38.14, 38.141(a), (b) (Vernon 2005). 
36. Young, 95 S.W.3d at 451.
37. See Blake, 971 S.W.2d at 454.
38. McDuff v. State, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997) (citing Munoz v. State, 853 S.W.2d
558, 559 (Tex. Crim. App. 1993)).
39. See id. 
40. See Tex. Code Crim. Proc. Ann. art. 38.17 (Vernon 2005); Young, 95 S.W.3d at 451.
41. See McDuff, 939 S.W.2d at 612.
42. See Rios v. State, 982 S.W.2d 558, 560 (Tex. App.-San Antonio 1998, pet. ref'd) (citing Dowthitt,
931 S.W.2d at 249). 
43. Id. at 561 (holding the glance the driver gave to the passenger was not evidence of nervous or
furtive behavior on the part of the passenger).
44. Id. at 560-61.
45. See Brown v. State, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984) (appearing to panic, driving away
from police, and other suspicious circumstances); Hill v. State, 832 S.W.2d 724, 726 (Tex. App.-Houston [1st
Dist.] 1992, no pet.) (engaging in furtive behavior inside vehicle consistent with attempting to hide or dispose
of something).
46. Hill, 832 S.W.2d at 725. 
47. Id. 
48. Id. 
49. Id.
50. Id. at 726. 
51. Id.
52. Id.
53. Id.
54. See Trevino, 991 S.W.2d at 851-52.
55. See Tex. Code Crim. Proc. Ann. arts. 38.14, 38.141 (Vernon 2005).
56. See Tex. R. App. P. 43.2 (c), 43.3.