**Opinion issued August 2, 2016**



In The

# Court of Appeals

For The

## First District of Texas

———————————

**NO. 01-14-00898-CR**

———————————

**JOSE CRISTINO HERNANDEZ, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 179th District Court**
**Harris County, Texas**
**Trial Court Case No. 1050633**

---

## MEMORANDUM OPINION

Appellant Jose Cristino Hernandez, Jr. was indicted for the felony offense of murder. The trial court found him guilty and assessed punishment at 40 years' confinement. Hernandez appeals, contending he was convicted upon

uncorroborated accomplice testimony and, therefore, the evidence is insufficient to support the judgment.  We affirm.

## Background

### *Non-accomplice testimony*

Myriam Flores testified that she and the complainant, Eric Romero, had spent the evening watching television, and the two left Romero's home around 2:00 A.M. to drive Flores home.  As the couple drove away, Flores, who was in the front passenger seat, noticed a group of people standing outside a nearby house.

Flores testified that a few minutes later, while still riding in Romero's car, she noticed a car beside the driver's side of Romero's car.  Flores saw Hernandez in the front passenger seat of the adjacent car and recognized him as someone she saw every day before school.  Flores next saw a person sitting in the back seat behind Hernandez with a bandana over his face holding a gun.  Within seconds, Flores heard shots fired and ducked.  Romero was shot, swerved off the road and crashed into a pole.  He died at the hospital.

### *Testimony of alleged accomplice Garcia*

Alejandro Garcia, who rode in the car with Hernandez, testified about the same series of events.  Garcia was outside his house when Romero and Flores drove by.  Although he was not a "cliqued"—or official—member himself, he was

in the company of four members of a gang called La Tercera Crips:  Hernandez, Juan Balderas, Israel Diaz, and a person known as "Taz."

Garcia testified that, as Romero drove by, Balderas said "[t]here's a Cholo," referring to La Tercera Crips' rival gang, the Southwest Cholos.  Garcia knew that when a La Tercera Crip saw a Cholo, the Crip would "run [the Cholo] out, beat him up, or, you know, shoot him."  Though Garcia knew Romero was no longer associated with the Cholos, he did not tell the others.

Balderas told the group to get in the car, and the group chased Romero. Diaz drove Balderas's car, with Hernandez in the front passenger seat, Balderas in the back passenger seat, and Garcia in the back behind the driver.  Taz drove separately.  Garcia testified that he was unarmed, but everyone else in the car had a gun:  Hernandez had a .357 revolver, Balderas a .357 automatic and a ".40," and Diaz had an unidentified firearm.

Garcia testified that they pulled up next to Romero's car, and Hernandez fired a shot at Romero.  Garcia then turned away, but heard multiple shots fired from the passenger side by both Hernandez, who sat in the front passenger seat, and Balderas, who sat behind Hernandez.  Garcia testified that on the ride back home, Hernandez said, "[w]e got him, cuz; we got him, cuz," and Balderas echoed the sentiment.

*Hernandez's statement & physical evidence*

Hernandez also recounted the events leading to Romero's murder in a recorded statement to police that was admitted at trial. According to Hernandez, he was already in the front passenger seat of Balderas's car, rolling a marijuana cigar, when Romero drove by Garcia's house. Hernandez told police that Balderas was the only person in the car carrying a weapon—a .357 automatic—and that Balderas was the only shooter.

The State also introduced physical evidence related to Romero's murder. Roger Milton, the medical examiner, testified that Romero sustained six gunshot wounds: one in his back, two in his left arm, and three in his left thigh. While Milton noted multiple gunshot wounds as the cause of death, he opined that the bullet recovered from Romero's back would have been fatal in and of itself.

Kim Downs, a firearms expert, also testified at trial. Downs determined that shell casings recovered from the scene were fired from a .357 Sig Taurus found in Balderas's possession at the time of his arrest. However, two bullets recovered from Romero's body—including the fatal bullet removed from Romero's back—did not match Balderas's .357 Sig Taurus. In her opinion, the bullet recovered from Romero's back was fired from a revolver.

At the close of the State's evidence, Hernandez urged the trial court to disregard Garcia's testimony as the uncorroborated testimony of an accomplice

4

witness. The trial court expressly found that Garcia was not an accomplice as a matter of law or as a matter of fact. The trial court further noted that even if Garcia were an accomplice, his testimony was sufficiently corroborated through Hernandez's and Flores's statements, as well as forensic evidence. After the trial court found Hernandez guilty and sentenced him to 40 years' confinement, Hernandez appealed.

## Discussion

Hernandez contends he was wrongly convicted on the uncorroborated testimony of an accomplice, Garcia, and that the non-accomplice evidence was insufficient to support the judgment. We determine, first, whether the testimony of the supposed accomplice, Garcia, may properly be considered in our sufficiency review.

## A. Applicable Law

Under Texas law, a criminal conviction cannot be based on accomplice testimony unless also independently corroborated by other evidence tending to connect the accused to the offense committed.[1] TEX. CODE CRIM. PROC. art. 38.14. In order to review the sufficiency of corroborating evidence, "we exclude the accomplice testimony from our consideration and determine whether there is any

---

[1] Article 38.14 of the Code of Criminal Procedure provides: "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. art. 38.14.

5

independent evidence that tends to connect the defendant with the commission of the offense." *Hernandez v. State*, 454 S.W.3d 643, 647 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). However, "it is not appropriate for appellate courts to independently construe the non-accomplice evidence." *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011). Instead, we view corroborating evidence in the light most favorable to the verdict. *Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008). "[W]hen there are conflicting views of the evidence—one that tends to connect the accused to the offense and one that does not—we will defer to the factfinder's resolution of the evidence." *Smith*, 332 S.W.3d at 442.

Accomplice-witness testimony "need be corroborated only as to facts 'tending to connect the defendant with the offense committed' and not as to the corpus delicti itself." *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007) (quoting *Gribble v. State*, 808 S.W.2d 65, 71 n.13 (Tex. Crim. App. 1990)). Corroborating evidence need not directly connect the defendant to the crime, and standing alone, it need not be sufficient to establish guilt. *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999). The evidence need only link the accused to the offense in some way such that a rational trier of fact could conclude that the evidence tended to connect the accused to the offense. *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009). Corroborating evidence may be direct or circumstantial, so long as rational jurors could have found that it

sufficiently tended to connect the accused to the offense. *Smith*, 332 S.W.3d at 442.

There is no set amount of non-accomplice corroboration evidence required, and, thus, we must judge each case on its own facts. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). Though mere presence at the scene of the crime is insufficient to corroborate accomplice testimony, *Cox v. State*, 830 S.W.2d 609, 611 (Tex. Crim. App. 1992), "[e]vidence that the defendant was in the company of the accomplice at or near the time or place of the offense is proper corroborating evidence." *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997) (first citing *Cockrum v. State*, 758 S.W.2d 577, 581 (Tex. Crim. App. 1988), *cert. denied*, 489 U.S. 1072, 109 S. Ct. 1358 (1989); then citing *Burks v. State*, 876 S.W.2d 877, 887–88 (Tex. Crim. App. 1994)). Ultimately, we "consider the combined force of all the non-accomplice evidence that tends to connect the accused to the offense." *Aviles-Barroso v. State*, 477 S.W.3d 363, 395 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (quoting *Smith*, 332 S.W.3d at 442).

**B.   Garcia's testimony was sufficiently corroborated to be considered in our legal sufficiency review.**

Hernandez contends that Garcia is an accomplice witness and that non-accomplice testimony insufficiently connects Hernandez to the offense. Even assuming, contrary to the trial court's finding, that Garcia is an accomplice

witness, we nevertheless conclude that the non-accomplice testimony was sufficient to tend to connect Hernandez to Romero's murder.

Hernandez correctly points out that "mere presence alone of a defendant at the scene of a crime is insufficient to corroborate accomplice testimony." *Malone*, 253 S.W.3d at 257. In support of his argument for reversal, Hernandez relies on *Nolley v. State*, 5 S.W.3d 850, 854 (Tex. App.—Houston [14th Dist.] 1999, no pet.), in which the Fourteenth Court of Appeals held the non-accomplice evidence did not permit a rational trier of fact to conclude that such evidence tended to connect the defendant to the offense. But the non-accomplice evidence in *Nolley* merely established that (1) the defendant had been in a car with an accomplice leaving defendant's house several hours before a murder and (2) the defendant was walking down a street with an accomplice a day and half after the murder. *Nolley*, 5 S.W.3d at 854. *Nolley* does not support Hernandez's argument, because, here, by contrast, the non-accomplice evidence does more.

First, unlike in *Nolley*, the non-accomplice evidence here does not merely place Hernandez with Garcia hours before and one day after Romero's shooting. *See Jackson v. State*, 487 S.W.3d 648, 657–58 (Tex. App.—Texarkana 2016, no pet.) (presence in company of accomplice near time offense not alone conclusive but important factor for consideration). Instead, Hernandez admitted that he rode in the front passenger seat of the car from which Balderas shot Romero *while*

8

Balderas shot Romero. And Flores likewise testified that Hernandez, whom she recognized as a person she saw every day before school, rode in the front passenger seat of the car from which Romero was shot. *See McDuff*, 939 S.W.2d at 613 ("Evidence that the defendant was in the company of the accomplice at or near the time or place of the offense is proper corroborating evidence.").

Second, unlike in *Nolley*, there was non-accomplice evidence from which a rational fact-finder could have inferred that Hernandez had a motive to harm Romero. Specifically, Hernandez admitted membership in La Tercera Crips, and he conceded that he and the others chased Romero because they believed him to be a member of a rival gang. *See Vasquez v. State*, 67 S.W.3d 229, 239 (Tex. Crim. App. 2002) (holding that gang-affiliation is relevant to show motive for gang-related crime); *Paulus v. State*, 633 S.W.2d 827, 846 (Tex. Crim. App. 1981) (evidence showing motive, alone, is insufficient, but can be considered in connection with other evidence tending to connect accused with offense).

Finally, the non-accomplice evidence showed that the bullets were fired from two guns, and thus permitted an inference that someone other than Balderas, and possibly Hernandez, fired at Romero. *See Smith*, 332 S.W.3d at 442 ("Motive and opportunity evidence is insufficient on its own to corroborate accomplice-witness testimony, but both may be considered in connection with other evidence that tends to connect the accused to the crime."). Hernandez testified that Balderas

9

shot Romero with a .357 automatic, and shells recovered from the crime scene matched the semiautomatic .357 Sig Taurus in Balderas's possession at the time of his arrest. But the physical evidence also showed that one of the gunshots, which was fatal in and of itself, came from a second gun. The non-accomplice evidence did not connect any particular person to this second gun and, accordingly, a rational fact-finder need not have inferred from the non-accomplice evidence that this second gun was fired by Hernandez as opposed to another person in the car. But the non-accomplice evidence need not show that Hernandez fired the second gun because it need not be sufficient to establish guilt. *See Cathey*, 992 S.W.2d at 462 (corroborating evidence need not directly connect accused to crime, and standing alone, it need not be sufficient to establish guilt). Rather, it is enough that the non-accomplice evidence showed that Romero was shot with two guns—one of which Hernandez had the opportunity to fire. *See Simmons*, 282 S.W.3d at 508 ("when there are two permissible views of the evidence (one tending to connect the defendant to the offense and the other not tending to connect the defendant to the offense), appellate courts should defer to that view of the evidence chosen by the fact-finder").

In sum, viewing the non-accomplice corroborating evidence in the light most favorable to the verdict, as we must, *Brown*, 270 S.W.3d at 567, we conclude that the cumulative weight of the evidence placing Hernandez in the car from which the

shots were fired, and suggesting both motive and opportunity to fire the second gun, sufficiently tends to connect Hernandez to Romero's murder. *See Cathey*, 992 S.W.2d at 462 ("It is not necessary that the corroborating evidence directly connect the defendant to the crime or that it be sufficient by itself to establish guilt; it need only tend to connect the defendant to the offense."); *Brown v. State*, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984) ("Proof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction."). Accordingly, Garcia's testimony may be considered in our legal sufficiency review.

## C.    Sufficient evidence supports the judgment.

### 1.    Standard of Review

When evaluating the legal sufficiency of the evidence in jury trials and in bench trials, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Robinson v. State*, 466 S.W.3d 166, 172 (Tex. Crim. App. 2015); *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010). The standard is the same for both direct and circumstantial evidence cases. *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995).

11

On appeal, we do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses, as this is the function of the trier of fact. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We therefore resolve any inconsistencies in the evidence in favor of the verdict, *Matson v. State*, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991), and "defer to the [trier of fact's] credibility and weight determinations." *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006).

### 2.    Applicable Law

In relevant part, a person commits the offense of murder if he "intentionally or knowingly causes the death of an individual" or "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." TEX. PENAL CODE § 19.02(b)(1)–(2). Because murder is a "result of conduct" offense, "the culpable mental state relates to the result of the conduct, *i.e.*, the causing of the death." *Schroeder v. State*, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003).

### 3.    Analysis

Considering the evidence in the light most favorable to the verdict, we conclude that the evidence is legally sufficient to support the judgment. Flores and Garcia each testified that Hernandez was sitting in the front passenger seat when the car in which he was riding pulled beside Romero's car. Hernandez admitted as

12

much. Garcia also testified that when Balderas's car pulled beside Romero's car, Hernandez, who was the only person in the car carrying a revolver, leaned out of the front passenger window and shot at Romero. Downs, the firearm examiner, testified that the bullet lodged in Romero's back was fired from a revolver. And Milton, the medical examiner, testified that the bullet in Romero's back caused such damage that it would have been fatal in and of itself. Thus, on the basis of eyewitness testimony and physical evidence, a rational trier of fact could have concluded that Hernandez fatally shot Romero with a revolver fired from the front passenger seat of Balderas's car.

Hernandez contends that the evidence was insufficient because Garcia is not credible. He contends Garcia lied to police in an unrelated case and that Garcia contradicted himself at trial about whether he himself carried a gun. He also argues that Garcia's testimony is not credible because it was obtained in exchange for a reduction in charges against Garcia in a capital murder case. However, judgments regarding the credibility of witnesses are reserved to the discretion of the trier of fact and cannot be unsettled on appeal. *See Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (stating that appellate courts must defer to factfinder's determinations of witnesses' credibility); *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008) (stating "[t]he [factfinder] is in the best position to judge the credibility of a witness because it is present to hear the testimony, as

opposed to an appellate court who relies on the cold record").

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Hernandez committed the offense of murder. *See Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007) (noting that factfinders are permitted to draw reasonable inferences from circumstantial evidence). Accordingly, we hold the evidence was sufficient to support the judgment and overrule Hernandez's point of error.

**Conclusion**

We affirm the trial court's judgment.


                                        Rebeca Huddle
                                        Justice

Panel consists of Chief Justice Radack, Justice Bland, and Justice Huddle.

Do not publish.