NUMBER 13-06-341-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


GONZALO ARTEMIO LOPEZ, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 92nd District Court 

of Hidalgo County, Texas

 


MEMORANDUM OPINION


Before Justices Rodriguez, Garza, and Vela


Memorandum Opinion by Justice Vela




 A jury found appellant, Gonzalo Artemio Lopez, guilty of capital murder (1) (count 1)
and aggravated kidnapping (2) (count 2), and the trial court assessed punishment at life
imprisonment and fifteen years' imprisonment, respectively. The sentences are to run
concurrently. In three issues, Lopez argues the trial court erred in admitting his written
confession into evidence, questioning witnesses during the suppression hearing, and
sentencing him on counts 1 and 2 in violation of his double-jeopardy protection against
multiple punishments for the same offense. We affirm.

 I. Factual Background


 The evidence (3) showed that between 4:30 a.m. and 4:45 a.m. on April 23, 2005,
Lopez was arrested for cocaine possession and taken to the Starr County sheriff's office
where Romeo Ramirez, Jr., an investigator for that office, interviewed him. Prior to
conducting the interview, Ramirez read Lopez the Miranda (4) warnings from a preprinted
form as follows:

 1. You have the right to remain silent and not make any statement at all and
that any statement you make may be used against you at your trial;


 2. Any statement you make may be used as evidence against you in court;


 3. You have the right to have a lawyer present, to advise you prior to and
during any questioning;


 4. If you're unable to employ a lawyer, you have the right to have a lawyer to
appointed to advise you prior to and during any questioning; and


 5. You have the right to terminate the interview at any time.[ (5)]


Ramirez testified that Lopez understood these warnings and that Lopez placed his initials
next to each warning. Lopez signed the preprinted form in Ramirez's presence at 5:20
a.m. that day. Lopez agreed to waive these rights, but told Ramirez that he wanted to
speak to an FBI agent. 

 Christopher Lee, an FBI agent, arrived at the Starr County sheriff's office about 8:30
a.m. that day. Prior to the interview, Lee read Lopez the warnings from the same
preprinted form that Ramirez used to admonish Lopez. Lee testified that Lopez
understood the warnings and that Lopez agreed to waive his rights and talk to him. During
the interview, Lee advised Lopez that Ranger Escalon was en route to interview Lopez
about a warrant out of Weslaco.

 About 12:50 p.m. that day, while Lee was in the interview room with Lopez, Ranger
Victor Escalon, Jr., came into the interview room and began to interrogate Lopez. Lopez
gave Escalon a written confession in which Lopez stated that a week before March 23,
2005, he had spoken to Juan Lerma, who was associated with the La Mana drug cartel
from Tamaulipas, Mexico. According to the confession, Lerma told Lopez that Lupe
Ramirez owed the cartel $40,000 and Lerma asked Lopez to "pick him up and collect the
$40,000." Lopez and an accomplice named "Rick" went to Lupe's house, abducted him
and wrapped him in duct tape, and then drove him to Lopez's mother's house in Weslaco. 
Lupe could only produce three trucks, $8,000, and thirty pounds of "weed" to cover the
$40,000 debt. Acting on Lerma's order to kill Lupe, Lopez and Rick drove Lupe to a
"monte" (6) where they dug a grave for Lupe's body. After digging the grave, they put Lupe
in the hole, and Lopez hit Lupe with a pick, killing him. They buried Lupe and left the
scene.

 After Lopez signed his written confession at 8:11 p.m. that day, he agreed to take
Ranger Escalon to where he and Rick had buried Lupe. At the scene, Escalon and other
law-enforcement personnel exhumed Lupe's body.

 The defense did not call any witnesses to testify at either the suppression hearing
or the guilt-innocence phase of the trial.

II. Discussion


A. Written Confession

 By issue one, Lopez argues the trial court erred in admitting his written confession
into evidence, in violation of Miranda v. Arizona, 384 U.S. 436 (1966). Lopez filed a pre-trial motion to suppress his confession, and after a pre-trial suppression hearing, the trial
court denied the motion. These actions alone would have preserved the suppression issue
for review without further objection by Lopez during the trial. At trial, however, when the
State sought admission of Lopez's written confession, defense counsel stated he had "No
objection, judge." The law is well settled that, when a defendant affirmatively asserts
during trial that he has "no objection" to the admission of the complained-of evidence, any
error in the admission of the evidence is waived even if the defendant had previously
preserved the error by a suppression motion and adverse ruling. Moody v. State, 827
S.W.2d 875, 889 (Tex. Crim. App. 1992); Dean v. State, 749 S.W.2d 80, 82-83 (Tex. Crim.
App. 1988); Harris v. State, 656 S.W.2d 481, 484 (Tex. Crim. App. 1983); McGrew v.
State, 523 S.W.2d 679, 680-81 (Tex. Crim. App. 1975). Because counsel affirmatively
stated he had no objection to the introduction of the confession, we hold the complaint is
not preserved. Issue one is overruled.

B. Court's Questioning of Witnesses

 In issue two, Lopez argues the trial court erred by questioning the State's witnesses
during the suppression hearing. During the suppression hearing, the trial judge, on
numerous occasions, questioned the State's witnesses in an effort to understand their role
in the case and whether Lopez received the Miranda warnings prior to giving his written
confession. However, Lopez's counsel did not object to the judge's questioning of the
witnesses. In order to preserve a complaint for appellate review, a party must have
presented to the trial court a timely request, objection, or motion stating the specific
grounds for the ruling the party desired the court to make if the specific grounds were not
apparent from the context. Tex. R. App. P. 33.1(a). When no objection is made, remarks
and conduct of the court may not be subsequently challenged unless they are
fundamentally erroneous. Moreno v. State, 900 S.W.2d 357, 360 (Tex. App.-Texarkana
1995, no pet.) (citing Brewer v. State, 572 S.W.2d 719, 721 (Tex. Crim. App. 1978)). 
Fundamental error is error that is so egregious and creates such harm that it deprives the
defendant of his or her right to a fair and impartial trial. Almanza v. State, 686 S.W.2d 157,
171-72 (Tex. Crim. App. 1985) (op. on reh'g).

 In Blue v. State, 41 S.W.3d 129, 131 (Tex. Crim. App. 2000) (plurality op.), the trial
court made comments in front of the jury that demonstrated he was not fair or impartial. 
A plurality of the court of criminal appeals held that a trial judge's comments "which tainted
[the defendant's] presumption of innocence in front of the venire, were fundamental error
of constitutional dimension and required no objection." Id. at 132. In a concurring opinion,
another judge wrote that the right at issue was the fundamental right to an impartial judge
and, as such, no objection was required. Id. at 138 (Keasler, J., concurring).

 A trial judge has broad discretion in maintaining control and expediting a trial and
may clear up a point of confusion. Jasper v. State, 61 S.W.3d 413, 421 (Tex. Crim. App.
2001). Here, the record does not reveal that the trial judge, by questioning the State's
witnesses, became so entangled as an advocate that he could not at the end of the
proceeding make an objective finding. See Moreno, 900 S.W.2d at 360. Nor can we say
the judge's questions indicated he abandoned his proper role as a neutral arbiter and
became an advocate for the State. See Bethany v. State, 814 S.W.2d 455, 462 (Tex.
App.-Houston [14th Dist.] 1991, pet. ref'd) (when trial court abandons position as neutral
arbiter and assumes role of advocate, fundamental fairness is lost). After examining the
record of the suppression hearing, we conclude there is no showing of fundamental error.

 Even if counsel had objected to the judge's questioning of the witnesses, the record
shows the judge did not err in doing so because his questions were for the purpose of
clarifying an issue before the court and were, therefore, permissible. See Brewer, 572
S.W.2d at 721 (trial court may question witness for purpose of clarifying issue before the
court). Issue two is overruled.

C. Double Jeopardy

 In issue three, Lopez argues that the trial court erred in sentencing him on counts
1 and 2 in violation of his double-jeopardy protection against multiple punishments for the
same offense. (7) Lopez's convictions for capital murder (count 1) and aggravated
kidnapping (count 2) were based on multiple counts in one indictment and were obtained
in a single trial.

 The Double Jeopardy Clause of the Fifth Amendment to the United States
Constitution protects against three distinct abuses: (1) a second prosecution for the same
offense after acquittal; (2) a second prosecution for the same offense after conviction; and
(3) multiple punishments for the same offense. Langs v. State, 183 S.W.3d 680, 685 (Tex.
Crim. App. 2006). A multiple-punishments claim can arise in the context of "punishing the
same criminal act twice under two distinct statutes when the legislature intended the
conduct to be punished only once (for example, causing a single death by committing both
intoxication manslaughter and involuntary manslaughter)." Id. 

 To determine whether a prosecution violates the protection against multiple
punishments, courts have applied the same-elements test of Blockburger v. United States,
284 U.S. 299, 304 (1932). Langs, 183 S.W.3d at 685; see Ex parte Herron, 790 S.W.2d
623, 624 (Tex. Crim. App. 1990). The Blockburger rule is that "where the same act or
transaction constitutes a violation of two distinct statutory provisions, the test to be applied
to determine whether there are two offenses or only one, is whether each provision
requires proof of a fact which the other did not." Blockburger, 284 U.S. at 304; Herron, 790
S.W.2d at 624. The Blockburger test is simply "a rule of statutory construction," a guide
to determining whether the legislature intended multiple punishment. Missouri v. Hunter,
459 U.S. 359, 366 (1983).

 At a trial there may be a substantial overlap in the proof of each offense; however,
it is the separate statutory elements of each offense that must be examined under the
Blockburger test. McDuff v. State, 943 S.W.2d 517, 524 (Tex. App.-Austin 1997, pet.
ref'd); State v. Marshall, 814 S.W.2d 789, 791 (Tex. App.-Dallas 1991, pet. ref'd). When
a defendant is tried under two separate statutes in one proceeding, Blockburger is the
applicable test, and the court is required to focus on the elements of the offense charged,
not on the evidence elicited at trial. McDuff, 943 S.W.2d at 524; see also Flores v. State,
906 S.W.2d 133, 136 (Tex. App.-San Antonio 1995, no pet.).

 Parrish v. State, 869 S.W.2d 352 (Tex. Crim. App. 1994), re-examined what is
meant by the "same elements" test after United States v. Dixon, 509 U.S. 688 (1993). The
Parrish court stated:

 We likewise think it reasonably clear from the various opinions in Dixon that
the essential elements relevant to a jeopardy inquiry are those of the
charging instrument, not of the penal statute itself. Statutory elements will,
of course, always make up a part of the accusatory pleading, but additional
nonstatutory allegations are necessary in every case to specify the unique
offense with which the defendant is charged.


Parrish, 869 S.W.2d at 354 (emphasis added).

 When the issue is whether the Fifth Amendment guarantee against multiple
punishment bars convictions on multi-count offenses in the same trial, we find Missouri v.
Hunter instructive. 459 U.S. at 359. Hunter held that the double-jeopardy clause does not
impose a limitation upon the legislative prerogative to "prescribe the scope of punishment."
459 U.S. at 368. In Hunter, the Missouri Supreme Court had concluded that the imposition
of multiple sentences under two statutory provisions that it construed to define the "same
offense" under the Blockburger test was jeopardy barred, despite express legislative
authorization of multiple punishment. The United States Supreme Court reversed, holding
that in the multiple-punishment context, Blockburger is no more than a rule of statutory
construction, useful in discerning the legislative intent concerning the scope of punishment
when that intent is not otherwise manifested. Blockburger does not operate to trump
"clearly expressed legislative intent." Hunter, 459 U.S. at 368; Ex parte Kopecky, 821
S.W.2d 957, 959 (Tex. Crim. App. 1992).

 In Hunter, the Court explained:

 Where, as here, a legislature specifically authorizes cumulative punishment
under two statutes, regardless of whether those two statutes proscribe the
"same" conduct under Blockburger, a court's task of statutory construction
is at an end and the prosecutor may seek and the trial court or jury may
impose cumulative punishment under such statutes in a single trial.


Hunter, 459 U.S. at 368-69; see also Garrett v. United States, 471 U.S. 773, 779 (1985)
("We have recently indicated that the Blockburger rule is not controlling when the legislative
intent is clear from the face of the statute or the legislative history.") (emphasis added).

1. Capital Murder

 Section 19.03 of the penal code defines capital murder as an intentional or knowing
killing under section 19.02(b)(1), (8) the traditional definition of murder, accompanied by one
of the listed aggravating or capital factors. See Tex. Penal Code Ann. § 19.03(a)(1)-(9)
(Vernon Supp. 2008). Section 19.03 is a separate and distinct offense with a mandatory
penalty of death or life imprisonment. Id. § 12.31(a). There are standards to guide the
jury. See Tex. Code Crim. Proc. Ann. art. 37.071, § 2 (Vernon 2006). The offense is one
of gradation, permitting the imposition of the death penalty only for the most serious
offenses.

 Relevant to the instant case, the applicable section of 19.03 provides: "(a) A person
commits an offense if the person commits murder as defined under Section 19.02(b)(1)
and: (2) the person intentionally commits the murder in the course of committing or
attempting to commit kidnapping . . . ." Tex. Penal Code Ann. § 19.03(a)(2) (Vernon Supp.
2008).

 In the instant case, the first paragraph of count 1 of the indictment alleged in
pertinent part that:

 GONZALO ARTEMIO LOPEZ . . . did then and there intentionally cause the
death of an individual, namely, Jose Guadalupe Ramirez, by striking him with
a pick, and the defendant was then and there in the course of committing
and attempting to commit the offense of kidnapping of Jose Guadalupe
Ramirez[.]


The second and third paragraphs of count 1 repeated the pertinent language of paragraph
one above except the cause of death was alleged "by striking him with a pick axe"
(paragraph two) and "by striking him with an object unknown to the Grand Jurors"
(paragraph three). Thus, count 1 alleged the offense of capital murder in the course of
committing or attempting to commit kidnapping.

 With respect to the allegations of capital murder in the instant case, we note that it
is unnecessary to allege the constituent elements of the aggravating feature that elevate
the offense of murder to capital murder. Alba v. State, 905 S.W.2d 581, 585 (Tex. Crim.
App. 1995); Gribble v. State, 808 S.W.2d 65, 73 (Tex. Crim. App. 1990); Beathard v. State,
767 S.W.2d 423, 431 (Tex. Crim. App. 1989). The phrase "in the course of committing or
attempting to commit" as used in section 19.03(a)(2) is not defined in the penal code. Riles
v. State, 595 S.W.2d 858, 862 (Tex. Crim. App. 1980). The phrase has been judicially
defined to mean "conduct occurring in an attempt to commit, during the commission or in
the immediate flight after the attempt or commission of the offense." Id; McGee v. State,
774 S.W.2d 229, 234 (Tex. Crim. App. 1989); see also Barnes v. State, 845 S.W.2d 364,
367 (Tex. App.-Houston [1st Dist.] 1992, no pet.). When the phrase is alleged in a capital-murder case, it does not necessarily require proof of a completed underlying offense or
completed attempt. McDuff, 943 S.W.2d at 526; see Flores, 906 S.W.2d at 139. 

2. Aggravated Kidnapping

 A person who intentionally or knowingly abducts another person is guilty of
kidnapping. Tex. Penal Code Ann. § 20.03(a) (Vernon 2003). The offense becomes
aggravated kidnapping if the offense is committed with the intent to: (1) hold the victim for
ransom or reward; (2) use the victim as a shield or hostage; (3) facilitate the commission
of a felony or the flight after the attempt or commission of a felony; (4) inflict bodily injury
on, violate, or abuse the victim sexually; (5) terrorize the victim or a third person; or (6)
interfere with the performance of any governmental or political function. Id. § 20.04(a)(1)-(6). Aggravated kidnapping is also committed if a "person intentionally or knowingly
abducts another person and uses or exhibits a deadly weapon during the commission of
the offense." Id. § 20.04(b). Aggravated kidnapping is a first-degree felony (9) unless the
actor "voluntarily release[s] the victim in a safe place," in which event it is a second-degree
felony. Id. § 20.04(d). Kidnapping is a separate and distinct crime under the penal code. 
Gribble, 808 S.W.2d at 71. Aggravated kidnapping is also a separate crime. McDuff, 943
S.W.2d at 926.

 
In the instant case, count 2, paragraph one of the indictment alleged in pertinent
part that:

 GONZALO ARTEMIO LOPEZ . . . did then and there, with the intent to hold
Jose Guadalupe Ramirez for ransom, intentionally and knowingly abduct
Jose Guadalupe Ramirez by restricting the movements of said Jose
Guadalupe Ramirez without his consent so as to interfere substantially with
his liberty, by confining him, with the intent to prevent his liberation, by using
and threatening to use deadly force, namely, a firearm[.]

 

The second paragraph of count 2 alleged Lopez prevented Ramirez's liberation "by
secreting or holding him in a place where he was not likely to be found, and the defendant
did then and there use or exhibit a deadly weapon, to-wit: a firearm, during the
commission of said offense[.]" Thus, count 2 alleged two forms of aggravated kidnapping
under section 20.04(a)(1) and section 20.04(b). It utilized both definitions of "abduct" (10) and
alleged the required intent to make the offense aggravated kidnapping.

3. Analysis

 In applying the Blockburger test, we observe that the State was required to prove
that Lopez intentionally or knowingly intended to cause Ramirez's death in order to convict
under count I (capital murder). The capital-murder allegation required an intent to kill which
was not required as an element of aggravated kidnapping. The aggravated kidnapping
allegation (paragraph one) required the specific intent to hold Ramirez for ransom, and
paragraph two required use or exhibition of a deadly weapon during the commission of the
offense. Because each offense has a unique element, they are not the "same offense"
under Blockburger. McDuff, 943 S.W.2d at 527; see Scott v. State, 861 S.W.2d 440, 446
(Tex. App.-Austin 1993, no pet.). Regardless of whether the Blockburger test has been
met, the touchstone is legislative intent. McDuff, 943 S.W.2d at 527; see Kopecky, 821
S.W.2d at 959. The question is whether the legislature intended that an accused in
Lopez's position be punished both for capital murder in the course of committing or
attempting to commit kidnapping and for aggravated kidnapping. We hold that this was the
legislature's intent.

 Capital murder and aggravated kidnapping are separate and distinct offenses in
different chapters of the penal code providing dissimilar penalties and protecting against
different evils. McDuff, 943 S.W.2d at 527. Each statute has its own unique elements. 
Id. Different types of capital murder may be alleged under section 19.03 or even under
section 19.03(a)(2) alone. Tex. Penal Code Ann. § 19.03 (Vernon Supp. 2008). Different
types of aggravated kidnapping may be alleged depending on the specific intent involved. 
Tex. Penal Code Ann. § 20.04 (Vernon 2003). The language structure of the statutes
reflects the legislative intent that multiple punishments be authorized for capital murder and
aggravated kidnapping when the convictions are obtained in a single trial. McDuff, 943
S.W.2d at 527. We conclude that the legislature intended aggravated kidnapping to be a
separate offense which is punishable in addition to any penalty imposed in a capital-murder case when the underlying or predicate offense may involve committing or
attempting to commit kidnapping. Id. Accordingly, Lopez's fifth amendment right against
multiple punishments for the same offense was not violated.

 In the instant case, the sentences were made to run concurrently because they
arose out of the same criminal episode and were tried in the same criminal action. See
Tex. Penal Code Ann. § 3.03(a) (Vernon Supp. 2008). Concurrent sentences do not
foreclose a finding of double jeopardy or require the finding. McDuff, 943 S.W.2d at 527,
see Ex parte Scelles, 511 S.W.2d 300, 302 (Tex. Crim. App. 1974); York v. State, 848
S.W.2d 341, 342 (Tex. App.-Texarkana 1993, pet. ref'd) (citing United States v.
Osunegbu, 822 F.2d 472, 481 (5th Cir.1987)). The third issue is overruled.

III. Conclusion


 We affirm the trial court's judgments.


 

 ROSE VELA 

 Justice



Do not publish.

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and

filed this 23rd day of October, 2008.
1. See Tex. Penal Code Ann. § 19.03(a)(2) (Vernon Supp. 2008).
2. See Tex. Penal Code Ann. § 20.04(a)(1), (b) (Vernon 2003).
3. When considering a suppression issue, we generally consider only evidence adduced at the
suppression hearing because the ruling was based on it rather than evidence introduced later. Rachal v.
State, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996). This general rule, however, is inapplicable when the
parties consensually relitigate the suppression issue during the trial on the merits. Gutierrez v. State, 221
S.W.3d 680, 687 (Tex. Crim. App. 2007); Rachal, 917 S.W.2d at 809. When the State raises the issue at
trial either without objection or with subsequent participation in the inquiry by the defense, the defendant has
made an election to reopen the evidence, and consideration of the relevant trial testimony is appropriate in
our review. Rachal, 917 S.W.2d at 809. Here, both the prosecutor and defense counsel asked the witnesses
questions during the trial on the merits regarding the circumstances surrounding Lopez's statement. Thus,
Lopez participated in the relitigation of the issue during trial, and we will therefore consider the evidence
adduced at both the suppression hearing and the trial on the merits. See id.
4. See Miranda v. Arizona, 384 U.S. 436 (1966).
5. These are the warnings required by article 38.22, section 2(a) of the code of criminal procedure. See
Tex. Code Crim. Proc. Ann. art. 38.22, § 2(a)(1)-(5) (Vernon 2005).
6. According to Ranger Escalon, the term "monte" means "brushy area."
7. Lopez did not raise his double jeopardy claim in the court below, but the alleged violation may be
raised for the first time on appeal. McDuff v. State, 943 S.W.2d 517, 524 (Tex. App.-Austin 1997, pet. ref'd).
8. See Tex. Penal Code Ann. § 19.03(a) (Vernon Supp. 2008).
9. See Tex. Penal Code Ann. § 20.04(c) (Vernon 2003).
10. Tex. Penal Code Ann. § 20.01(2)(A), (B) (Vernon Supp. 2009).